COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:  Judges Humphreys, Chafin and Decker
Argued in Bristol, Virginia


RUDOLPH DAVID TAYLOR

v.      Record No. 1330-15-3
                                                        OPINION BY
COMMONWEALTH OF VIRGINIA                    JUDGE TERESA M. CHAFIN
                                                    SEPTEMBER 13, 2016
RUDOLPH DAVID TAYLOR

v.      Record No. 1340-15-3

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
Jack S. Hurley, Jr., Judge

Carletta J. Faletti; James P. Carmody (Faletti Law Firm, on brief),
for appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


The Circuit Court of Tazewell County convicted Rudolph David Taylor of one count of

transporting controlled substances into the Commonwealth in violation of Code § 18.2-248.01,

and two counts of possessing controlled substances with the intent to distribute them in violation

of Code § 18.2-248.  Although Taylor pled guilty to these offenses, he reserved his right to

challenge the circuit court's decision denying his motion to suppress certain evidence.  Taylor

contends that the warrant authorizing the search of his home following a controlled delivery of a

package containing the substances at issue in this case was not supported by probable cause.

Specifically, Taylor argues that:

1. There was [an] insufficient nexus between the intended destination of the parcel and the address to which it was diverted by law enforcement.

2. The conditioned anticipatory search warrant failed to state a triggering event which would satisfy the requirement that there would be a fair probability that contraband would be found inside of Taylor's residence at the time the search warrant was served and the premises searched.

3. The conclusions propounded by law enforcement to obtain the search warrant were not based upon the [affiant officer's] personal knowledge as presented in the affidavit, but upon statements taken from an informant some sixty (60) days prior, whose credibility and reliability were untested and not supported as required within the affidavit.

4. The information contained in the affidavit to secure the search warrant was too stale to be considered reliable by a magistrate.

For the reasons that follow, we affirm Taylor's convictions.

## I.  BACKGROUND

"In accord with settled principles of appellate review, on appeal of the denial of a motion to suppress, we review the evidence and all reasonable inferences fairly deducible from that evidence in the light most favorable to the Commonwealth, the party prevailing [in the trial court]." Anzualda v. Commonwealth, 44 Va. App. 764, 771, 607 S.E.2d 749, 752 (2005) (*en banc*).  So viewed, the evidence is as follows.

On October 22, 2013, a Customs and Border Patrol agent intercepted a package containing 116 grams of methylone, a substance commonly referred to as "bath salts," at a FedEx facility in Alaska.  The package was sent from Shijazhaung, China, and addressed to "Dave Taylor" at "106 Dial Rock Road" in Tazewell, Virginia.  The Customs and Border Patrol agent delivered the package to the Department of Homeland Security ("DHS"), and a DHS agent agreed to attempt a controlled delivery of the package in Virginia.

The DHS agent travelled to Tazewell and obtained a warrant to search the residence located at 106 Dial Rock Road. This warrant was anticipatory in nature, and only allowed the agent to search the premises if an individual accepted the package "into the residence." On October 28, 2013, the agent attempted to deliver the package while disguised as a FedEx employee. A resident living at 106 Dial Rock Road informed him that Taylor did not live at that address and refused to accept the package. Thus, the triggering condition of the anticipatory warrant did not occur and the agent and other assisting police officers from the Town of Tazewell did not search the residence.

The DHS agent contacted the Tazewell County Sheriff's Office ("Sheriff's Office") the next day to inform them about the failed delivery. When the agent inquired about a possible investigation of Taylor's involvement in the distribution of narcotics, officers informed him that they had been investigating Taylor for eight months. In February of 2013, the Sheriff's Office had received information that Taylor was buying bath salts online from a source located in a foreign country, importing them into the United States through the postal system, and selling them. Following this initial report, Taylor's former girlfriend, Elizabeth Elswick, was arrested for possessing bath salts. She claimed that she had received the drugs from Taylor and that he ordered them through the mail.

Elswick also provided the police with a packaging slip, or "waybill," concerning one of Taylor's bath salt transactions. The waybill referred to a package addressed to "Rudolph Taylor" at "6555 Pounding Mill Branch Road, Pounding Mill, Virginia," that had been mailed on August 12, 2013.[1] Like the package intercepted by DHS, the package described in the waybill had been

---

[1] Pounding Mill is a community located in Tazewell County, Virginia.

sent from Shijazhuang, China. Records from the Department of Motor Vehicles ("DMV")

confirmed that Taylor listed "6555 Pounding Mill Branch Road" as his address.

Utilizing the supplemental information from the prior investigation of Taylor, Detective

Bill Perry of the Sheriff's Office requested a warrant to search the residence located at 6555

Pounding Mill Branch Road. In his affidavit supporting his request for this warrant, Perry stated:

> On October 29, 2013 an agent of the Tazewell County Narcotics
> Task Force contacted . . . an agent of the Department of Homeland
> Security. This agent advised that he contacted Tazewell Police
> Department with a package that contained 116 grams of Methylone
> "bath salts" [which] was intercepted in Anchorage[,] Alaska[,]
> addressed to Dave Taylor at 106 Dial Rock Rd.[,] North
> Tazewell[,] VA. On 10/28/13 they attempted a controlled delivery
> of the package but the package was refused at this residence. An
> on-going investigation over the past eight months has revealed by
> this Detective that Dave Taylor has received on August 12, 2013 a
> package from the same address from Hersei[,] China.[2] Mr. Taylor
> lives [at] 6555 Pounding Mill Branch Rd.[,] Pounding Mill[,] Va.
> On October 30, 2013, this Task Force will be attempting a
> controlled delivery of the package to Taylor's address on Pounding
> Mill [Branch] Rd.

In another section of the affidavit, Perry stated:

> Customs has intercepted a package in Anchorage[,] Alaska[,] that
> contains approximately 116 grams of Methylone addressed to
> Dave Taylor at 106 Dial Rock Rd[,] North Tazewell[,] Va.
> Mr. Taylor has received a package from the same address in China
> to his residence at 6555 Pounding Mill Br. Rd.[,] Pounding Mill[,]
> Va. Substance was tested by Homeland Security and determined
> to be Methylone "bath salts." Information received by this
> detective has revealed that this substance is being ordered and
> received by US mail, FedEx, and UPS from China.

---

[2] We note that the affidavit refers to a package sent from an address in "Hersei, China"
rather than an address in Shijazhuang. A review of the handwritten address on the waybill
suggests that Shijazhuang is a city located in the province of either "Hersei" or "Hebei."

We also note that the affidavit claims that Taylor received the package referenced in the
waybill on August 12, 2013. The waybill itself, however, suggests that the package was mailed
from China on that date. In such a case, Taylor would have received the package sometime after
August 12, 2013.

While Perry checked a box on the affidavit form indicating that he had personal knowledge of the facts set forth in the affidavit, he provided "a synopsis of the investigation" of Taylor while testifying under oath before the magistrate who reviewed the warrant application.

Based on Perry's affidavit and testimony, the reviewing magistrate issued a warrant allowing the police to search Taylor's residence at 6555 Pounding Mill Branch Road for evidence of drug distribution. This warrant was similar to the prior warrant authorizing a search of the residence located at 106 Dial Rock Road. Although the warrant did not require the intercepted package to be taken into the residence, it was conditioned on Taylor's acceptance of the package.

On October 30, 2013, the Tazewell County Narcotics Task Force executed the search warrant at 6555 Pounding Mill Branch Road. Disguised as a UPS employee, Detective Greg Layne delivered the package addressed to 106 Dial Rock Road to Taylor as he was leaving his residence in Pounding Mill. While Layne did not point out the address discrepancy to Taylor, he told him that "he was a hard man to get up with." Taylor accepted the package in his driveway approximately six feet away from the front door of the residence, placed it in the waistband of his pants, and turned to go back into the house. As Taylor was walking toward the house, Layne signaled for other officers hiding in a nearby delivery van to arrest him before he entered the residence with the package.

When the officers executed the warrant, they seized the package containing the bath salts, documents referencing drug transactions, and other items potentially linked to the distribution of controlled substances. Notably, two documents found on the coffee table of Taylor's living room contained the tracking number for the package the police had just delivered. The officers also seized "various items of narcotics paraphernalia" from the house, including a set of digital

scales, two used syringes, and two metal spoons and a glass smoking pipe containing the residue of an unknown substance.

After Taylor was charged with numerous drug offenses,[3] he filed a motion to suppress the evidence the police obtained following the controlled delivery of the intercepted package. The circuit court denied Taylor's suppression motion in a detailed opinion letter. The circuit court concluded that the totality of the circumstances of this particular case established a nexus between the intercepted package and Taylor's residence in Pounding Mill, explaining that the evidence implied that Taylor would have eventually received the package at his home despite its intended delivery to Dial Rock Road. The circuit court explained that the evidence gathered by Perry in his investigation of Taylor established probable cause to believe that Taylor was engaged in ongoing criminal activity and that contraband and evidence of drug distribution would be found inside of his residence at 6555 Pounding Mill Branch Road when the police executed the warrant.

Taylor pled guilty to three charges based on the contraband contained in the intercepted package and reserved the right to appeal the circuit court's decision regarding his motion to suppress.[4] The circuit court sentenced Taylor to serve a seventy-five-year period of incarceration and suspended sixty-two years of that sentence, resulting in a period of thirteen years of active incarceration. These appeals followed.

## II. ANALYSIS

On appeal, Taylor presents four arguments challenging the warrant authorizing a search of the residence at 6555 Pounding Mill Branch Road. First, he argues that the warrant was

---

[3] Most of these charges were dismissed on the Commonwealth's motion after Taylor agreed to plead guilty to the charges at issue in this case.

[4] Taylor pled guilty to the charges with the following corresponding case numbers: CR14-683-00, CR14-684-00, and CR14-685-00.

facially invalid because the facts alleged in Perry's affidavit failed to establish a sufficient nexus between the intercepted package and his residence in Pounding Mill. Second, he claims that the triggering condition in the anticipatory warrant failed to establish a reasonable probability that evidence would be found in his home when the warrant was executed. Third, Taylor contends that Perry failed to reveal that he obtained information from an informant to support his application for the warrant and that he failed to establish her credibility or reliability. Fourth, Taylor contends that the affidavit supporting Perry's request for the anticipatory warrant relied on stale information.

Upon review, we conclude that the anticipatory warrant authorizing the search of Taylor's residence in Pounding Mill was supported by probable cause. The totality of the circumstances of this particular case established a nexus between the package and Taylor's residence. Furthermore, while we acknowledge that the affidavit supporting the application for the warrant was not the model of clarity, we conclude that any potential omission as to the source of the information in the affidavit was not fatal to the warrant. Additionally, we find that the affidavit supporting the warrant was not based entirely on stale information. The totality of the circumstances established the probability of ongoing criminal activity at 6555 Pounding Mill Branch Road.

A. STANDARD OF REVIEW

An appellant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact on appeal. King v. Commonwealth, 49 Va. App. 717, 721, 644 S.E.2d 391, 393 (2007). While we apply a *de novo* standard of review to the trial court's application of the law, "[w]e are bound by the trial court's factual findings unless those findings are 'plainly wrong or unsupported by the evidence.'" Ward v. Commonwealth, 273 Va. 211, 218, 639 S.E.2d 269, 272 (2007) (quoting Pyramid Dev., L.L.C. v. D & J Assocs., 262 Va.

- 7 -

750, 753, 553 S.E.2d 725, 727 (2001)).  When a trial court's decision to deny a motion to suppress is challenged on appeal, "[t]he burden is on the [appellant] to show that the trial court committed reversible error."  Id.

"Furthermore, when reviewing the validity of a warrant and its supporting affidavit, the 'magistrate's determination of probable cause should be paid great deference by reviewing courts.'"  Id. (quoting Illinois v. Gates, 462 U.S. 213, 236 (1983)).  This deferential standard "is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant."  Anzualda, 44 Va. App. at 775, 607 S.E.2d at 754 (quoting Tart v. Commonwealth, 17 Va. App. 384, 388, 437 S.E.2d 219, 221 (1993)); see also United States v. Leon, 468 U.S. 897, 914 (1984) ("Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination."); United States v. Ventresca, 380 U.S. 102, 109 (1965) (reasoning that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants").

### B.  THE PROBABLE CAUSE REQUIREMENT FOR ANTICIPATORY SEARCH WARRANTS

As a preliminary matter, we must address the interplay between a case from the Supreme Court of the United States and Virginia precedent involving the probable cause required to support anticipatory search warrants.[5]  The Supreme Court addressed anticipatory search

---

[5] Decisions from the Supreme Court of the United States involving the analysis of the Fourth Amendment impact our prior decisions involving similar issues despite the fact that Article I, Section 10 of the Virginia Constitution also prohibits unlawful searches and seizures. See Lowe v. Commonwealth, 230 Va. 346, 348 n.1, 337 S.E.2d 273, 274 n.1 (1985) (explaining that the rights protected by the Virginia Constitution are co-extensive with the rights protected by similar provisions of the United States Constitution).

warrants in <u>United States v. Grubbs</u>, 547 U.S. 90 (2006).  In that case, the Supreme Court explained that "[a]n anticipatory warrant is 'a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.'"  <u>Id.</u> at 94 (quoting 2 Wayne R. LaFave, <u>Search and Seizure</u> § 3.7(c), at 398 (4th ed. 2004)).  "Anticipatory warrants are . . . no different in principle from ordinary warrants." <u>Id.</u> at 96.  Like all warrants, the Fourth Amendment requires anticipatory search warrants to be supported by probable cause.  <u>See</u> U.S. Const. amend. IV (stating "*no* Warrants shall issue, but upon probable cause" (emphasis added)).  "Because the probable-cause requirement looks to whether evidence will be found *when the search is conducted*, all warrants are, in a sense, 'anticipatory.'"  <u>Grubbs</u>, 547 U.S. at 95 (emphasis in original).

"[W]hen an anticipatory warrant is issued, 'the fact that the contraband is not presently located at the place described in the warrant is immaterial, so long as there is probable cause to believe that it will be there when the search warrant is executed.'"  <u>Id.</u> at 96 (quoting <u>United States v. Garcia</u>, 882 F.2d 699, 702 (2d Cir. 1989)).  "Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time--a so-called 'triggering condition,'" such as the delivery of a parcel to a specified individual at a specified address.  <u>Id.</u> at 94.

> If the government were to execute an anticipatory warrant before the triggering condition occurred, there would be no reason to believe the item described in the warrant could be found at the searched location [because,] by definition, the triggering condition which establishes probable cause has not yet been satisfied when the warrant is issued.

<u>Id.</u>

The Supreme Court described the probable cause determination required for the issuance of an anticipatory search warrant as a two-pronged inquiry.

> [F]or a conditioned anticipatory warrant to comply with the Fourth
> Amendment's requirement of probable cause, two prerequisites of
> probability must be satisfied. It must be true not only that if the
> triggering condition occurs "there is a fair probability that
> contraband or evidence of a crime will be found in a particular
> place," but also that there is probable cause to believe the
> triggering condition will occur. The supporting affidavit must
> provide the magistrate with sufficient information to evaluate both
> aspects of the probable-cause determination.

Id. at 96-97 (quoting Gates, 462 U.S. at 238).

Before Grubbs, this Court held that "an anticipatory warrant is valid so long as there is probable cause to believe that the contraband will be located on the premises at the time the warrant is executed." McNeill v. Commonwealth, 10 Va. App. 674, 680, 395 S.E.2d 460, 463 (1990). This Court explained that the probable cause required to support an anticipatory warrant may be established by showing that the contraband to be seized under the warrant is on a "sure course" to the premises to be searched. Id. at 680, 395 S.E.2d at 463-64. Under such circumstances, police involvement in the delivery of the contraband does "nothing to create or enhance the crime." Id. at 678, 395 S.E.2d at 462.

Based on the "sure course" analysis outlined in McNeill, Taylor contends that Perry's affidavit failed to establish a sufficient nexus between his residence at 6555 Pounding Mill Branch Road and the intercepted package of bath salts. Taylor argues that the package was initially sent to a house with a dissimilar address in a different community, and he maintains that the contraband at issue in this case would have never reached his home in Pounding Mill if the police had not intervened and diverted the package.

Virginia courts have not addressed how the Grubbs decision affects the "sure course" analysis previously applied in our precedent.[6] We observe, however, that Grubbs did not

---

[6] The Supreme Court of Virginia previously noted that this Court addressed the "sure course" requirement in Ward v. Commonwealth, 47 Va. App. 733, 746, 627 S.E.2d 520, 526

expressly impose a "sure course" requirement. <u>Grubbs</u> does not mention "sure course" analysis anywhere in the decision, despite the fact that many jurisdictions applied "sure course" analysis at the time. <u>See, e.g.,</u> <u>United States v. Dennis</u>, 115 F.3d 524, 530 (7th Cir. 1997); <u>United States v. Dornhofer</u>, 859 F.2d 1195, 1198 (4th Cir. 1988); <u>United States v. Hale</u>, 784 F.2d 1465, 1468 (9th Cir. 1986); <u>McNeill</u>, 10 Va. App. at 680, 395 S.E.2d at 463-64.

We conclude that <u>Grubbs</u> does not require a package to be on a "sure course" to the premises to be searched as a condition precedent to the issuance of an anticipatory search warrant. Rather, <u>Grubbs</u> only requires anticipatory search warrants to be supported by probable cause. Specifically, <u>Grubbs</u> requires anticipatory warrants to be supported by probable cause establishing: (1) that the triggering condition of the warrant is likely to occur, and (2) that contraband or evidence of crime will likely be found on or in the premises to be searched upon the occurrence of the triggering condition. <u>See</u> <u>Grubbs</u>, 547 U.S. at 96-97.

While the "sure course" analysis outlined in <u>McNeill</u> may be sufficient to establish probable cause regarding the two conditions set forth in <u>Grubbs</u>, we conclude that it is merely one way of establishing a constitutionally sufficient nexus between a package and the premises to be searched. In certain circumstances, a sufficient nexus between a package containing contraband and a specified location may be established even when the package is not on a "sure course" to that destination. Having set forth these principles, we turn to the facts of the present case to determine whether the warrant at issue was supported by sufficient probable cause.

_____

(2006), on the same day of the <u>Grubbs</u> decision. <u>See</u> <u>Ward</u>, 273 Va. at 221, 639 S.E.2d at 274. The Supreme Court, however, declined to "resolve whether the Court of Appeals analysis [met] the requirements of <u>Grubbs</u>" and decided the case based on the application of the good faith exception outlined in <u>Leon</u>. <u>See</u> <u>id.</u>

- 11 -

C. PROBABLE CAUSE SUPPORTED THE ANTICIPATORY SEARCH WARRANT ISSUED IN THIS CASE

"[T]he existence of probable cause is determined by examining the totality-of-the-circumstances." Anzualda, 44 Va. App. at 774, 607 S.E.2d at 754 (quoting Janis v. Commonwealth, 22 Va. App. 646, 651-52, 472 S.E.2d 649, 652 (1996)). Probable cause for the issuance of a search warrant exists when, "given all the circumstances . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." Tart, 17 Va. App. at 387, 437 S.E.2d at 221. "When determining whether probable cause exists, the magistrate may draw reasonable inferences from the material supplied to him." Anzualda, 44 Va. App. at 775, 607 S.E.2d at 754. In addition to the "sworn, written facts stated in the search warrant affidavit," a magistrate may also consider the "information simultaneously presented . . . by sworn oral testimony." Adams v. Commonwealth, 275 Va. 260, 270, 657 S.E.2d 87, 93 (2008).

As previously stated, an application for an anticipatory search warrant must establish that:  (1) the triggering condition of the warrant is likely to occur, and (2) contraband or evidence of crime will likely be found on or in the premises to be searched upon the occurrence of the triggering condition. See Grubbs, 547 U.S. at 96-97. The warrant at issue in the present case is somewhat of a "hybrid" warrant. The warrant is not entirely an anticipatory search warrant because it was partially based on information that implied contraband would be found at Taylor's residence at the time the warrant was issued (i.e. before the police delivered the intercepted package). The warrant, however, was conditioned on Taylor's acceptance of the package, and therefore, based partially on the occurrence of a future event. Thus, the warrant is, in part, an anticipatory warrant. In light of the condition placed on the warrant and the fact that the charges

to which Taylor pled guilty were based on the contraband contained in the intercepted package, we view the warrant as an anticipatory search warrant in our analysis of this case.

While the contraband in the present case may or may not have been on a "sure course" to Taylor's residence in Pounding Mill, the totality of the circumstances established a nexus between the contraband contained in the intercepted package and Taylor's home. The package itself was addressed to "Dave Taylor," and DMV records established that "Rudolph David Taylor" lived at 6555 Pounding Mill Branch Road in Pounding Mill, Virginia. Therefore, the intended recipient listed on the intercepted package directly linked it to the residence in Pounding Mill.

More importantly, the waybill that Elswick provided to the police showed that Taylor had received a similar package at his residence in Pounding Mill approximately two months earlier. Like the intercepted package, the package referenced in the waybill was sent to Tazewell County from Shijazhuang, China. That package was delivered to 6555 Pounding Mill Branch Road, and accepted by an individual who signed as "R. Taylor."

Taylor was also linked to the contents of the intercepted package. The intercepted package contained bath salts, and police from the Sheriff's Office had been investigating Taylor for his involvement in the distribution of bath salts in the area for eight months. When Elswick was arrested for possessing bath salts, she told the police that she had received them from Taylor. She also told the police that Taylor ordered the bath salts online and received them in the mail. The waybill provided by Elswick suggested that Taylor received bath salts from a supplier in a foreign country.

These circumstances provided sufficient probable cause to support the issuance of an anticipatory search warrant. The intercepted package was linked to Taylor's residence in Pounding Mill by both its contents and Taylor's past actions. The nexus established between the

- 13 -

package and Taylor's residence satisfied both conditions required by Grubbs. Based on Taylor's alleged involvement in the distribution of bath salts and his prior receipt of a similar package at his residence, the magistrate issuing the anticipatory warrant could reasonably conclude that Taylor would accept the intercepted package when it was delivered by the police and that contraband would be found inside of his home when the search warrant was executed.

### D. TAYLOR'S ARGUMENT CONCERNING THE TRIGGERING CONDITION OF THE ANTICIPATORY SEARCH WARRANT

On appeal, Taylor contends that the occurrence of the triggering condition set forth in the anticipatory warrant did not establish sufficient probable cause to support a search of his residence. As the warrant was conditioned on Taylor's mere acceptance of the package, Taylor argues that the occurrence of the triggering condition failed to establish probable cause to believe that contraband or other evidence of criminal activity would be found inside of his house. While the magistrate issuing the warrant and the police executing it could have reasonably believed that Taylor would possess contraband on his person if he accepted the package, Taylor maintains that the same inference did not extend to inside of his residence because he was arrested before he took the package into his home.[7]

This argument assumes that the probable cause supporting the anticipatory warrant was limited to the occurrence of the triggering condition. As previously discussed, the totality of the circumstances of the present case established sufficient probable cause to support the search warrant. The investigation of Taylor by the Sheriff's Office implied that he was involved in an

---

[7] At the suppression hearing, the officers participating in the search testified that they arrested Taylor outside of his residence due to concerns for their personal safety. The officers noted that Taylor had numerous video cameras positioned around his house that provided live video feeds into a console that was visible in his living room. Additionally, the officers explained that individuals acting under the influence of bath salts may potentially act aggressively or become violent.

- 14 -

ongoing criminal enterprise of distributing bath salts and that he had previously received a

package at his home in Pounding Mill that was similar to the intercepted package known to

possess those substances.

> A magistrate is entitled to draw reasonable inferences about where incriminating evidence is likely to be found, based on the nature of the evidence and the type of the offense. In the case of drug dealers, evidence of that on-going criminal activity is likely to be found where the dealer resides.

Cunningham v. Commonwealth, 49 Va. App. 605, 613, 643 S.E.2d 514, 518 (2007) (quoting

Gwinn v. Commonwealth, 16 Va. App. 972, 975-76, 434 S.E.2d 901, 904 (1993)). Accordingly,

a magistrate may reasonably infer that drugs, drug paraphernalia, or other evidence of

drug-related activity will be found in a suspected drug dealer's residence. Id.

We conclude that the totality of the circumstances of this particular case established a

reasonable probability that contraband and evidence pertaining to the distribution of bath salts

would be found inside of Taylor's house.

E.  SOURCE OF THE INFORMATION CONTAINED IN PERRY'S AFFIDAVIT

Taylor contends that the warrant was defective because Perry failed to reveal the source

of the information contained in his affidavit or provide the magistrate with any information

establishing the credibility and reliability of his informant. We acknowledge that Perry's

affidavit was not drafted with precision. After reviewing the record, however, we conclude that

Taylor's arguments concerning these issues are without merit.

Taylor maintains that Perry's affidavit was based on information obtained from a third

party rather than his personal knowledge. Despite this fact, Taylor contends that Perry

erroneously indicated that he had personal knowledge of the facts supporting the warrant by

checking a box on the affidavit form. Taylor argues that Perry failed to inform the magistrate

- 15 -

that the facts supporting the affidavit were obtained from Elswick and that he failed to supply the magistrate with any information establishing her credibility and reliability.[8]

Taylor's argument fails when Perry's statements in the affidavit are considered along with his testimony at the suppression hearing. In the affidavit, Perry states that some of the information presented to support the warrant was obtained through "[a]n on-going investigation over the past eight months." Thus, the affidavit indicated that it was based on more than Perry's personal knowledge.

Moreover, at the suppression hearing, Perry explained that he provided a synopsis of the investigation when he testified under oath before the reviewing magistrate. When deciding the question of whether probable cause supports the issuance of a search warrant, we may consider the "sworn, written facts stated in the search warrant affidavit" and the "information simultaneously presented to a magistrate by sworn oral testimony." Adams, 275 Va. at 270, 657 S.E.2d at 93. "[A]n insufficient affidavit may be supplemented or rehabilitated by information disclosed to the issuing magistrate upon application for the search warrant." McCary v. Commonwealth, 228 Va. 219, 231, 321 S.E.2d 637, 643 (1984).

Although Perry's testimony at the suppression hearing did not provide the details of his synopsis of the investigation, we can reasonably conclude that his synopsis included the information obtained from Elswick and explained its source. The information that Elswick

_____

[8] We note that most of the statements contained in Perry's affidavit were not based solely on information obtained from Elswick. His statements concerning the intercepted package came directly from the DHS agent participating in the investigation. Additionally, his statement concerning the delivery of a similar package to Taylor's residence in August of 2013 was based on both Elswick's statements to the police and the consideration of the waybill that she provided. Similarly, Perry verified Taylor's address through DMV records rather than the information provided by Elswick. The only information provided by Elswick that was not verified by additional documentary evidence concerned Taylor's ongoing distribution of bath salts from his home in Pounding Mill.

provided to the police was central to their investigation of Taylor, and Perry's affidavit expressly referenced information obtained from the waybill provided by Elswick. Under these circumstances, we can reasonably infer that Perry's testimony before the magistrate described Elswick's role in the investigation.

Additionally, we note that the information that Elswick provided to the police was corroborated by the intercepted package. Elswick told the police that Taylor distributed bath salts that he received in the mail, and she gave the police a waybill referencing a package of bath salts that Taylor had received. The intercepted package contained bath salts, it named Taylor as its intended recipient, and it was sent from the same city in China as the package referenced in the waybill provided by Elswick. Thus, the package provided corroborating evidence supporting the credibility of Elswick's statements.

Applying our deferential standard of appellate review, we conclude that Perry informed the magistrate of Elswick's role in the investigation when he testified before her under oath. We also find that the intercepted package corroborated Elswick's statements to the police. Accordingly, we reject Taylor's arguments concerning the inadequacies surrounding the source of the information in Perry's affidavit.

F. THE ANTICIPATORY SEARCH WARRANT WAS NOT BASED ENTIRELY ON STALE INFORMATION

Taylor contends that the search warrant was based on information that was too stale to establish a reasonable probability that contraband would be found in his residence when the police performed the search. We disagree.

Taylor's argument is based primarily on the statements that Elswick made to the police and the waybill that she provided concerning the package that Taylor previously received from China at his residence in Pounding Mill. The waybill established that the package was sent to

- 17 -

Taylor from China on August 12, 2013. Although Perry did not specify if Elswick made statements to the police on multiple occasions, he testified at the suppression hearing that he and another officer interviewed her about Taylor's involvement in the distribution of bath salts on August 21, 2013. As the anticipatory search warrant involved in this case was issued on October 30, 2013, the waybill and Elswick's statements referenced events that were over two months old at the time of the magistrate's probable cause determination. Taylor contends that this stale information could not establish sufficient probable cause to support the warrant.

"[A] finding of probable cause to search must be based upon facts reasonably related in time to the date of the issuance of the warrant[.]" Huff v. Commonwealth, 213 Va. 710, 716, 194 S.E.2d 690, 695 (1973). "'[A] warrant will be tested for "staleness" by considering whether the facts alleged in the warrant provided probable cause to believe, at the time the search actually was conducted, that the search conducted pursuant to the warrant would lead to the discovery of evidence of criminal activity.'" Anzualda, 44 Va. App. at 776, 607 S.E.2d at 755 (quoting Johnson v. Commonwealth, 259 Va. 654, 671, 529 S.E.2d 769, 778 (2000)). "Generally, 'there is no fixed standard or formula establishing a maximum allowable interval between the date of events recited in an affidavit and the date of a search warrant.'" Id. "Rather, we must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized" to determine whether a warrant was impermissibly based on stale information. Id. (quoting Perez v. Commonwealth, 25 Va. App. 137, 142, 486 S.E.2d 578, 581 (1997)).

Taylor's argument fails to consider the totality of the circumstances supporting the issuance of the search warrant in the present case. Additional facts supported the warrant beyond Elswick's statements about Taylor's criminal activity and the waybill that she provided to the police, namely the interception of the package containing bath salts that listed Taylor as its

intended recipient. Unlike Elswick's statements and the waybill, the interception of the package occurred shortly before the warrant was issued and executed. Customs and Border Patrol agents intercepted the package eight days before it was delivered to Taylor's residence.

When Elswick's statements and the waybill were considered along with the intercepted package and the contraband that it contained, the magistrate could have inferred that Taylor was engaged in a continuing criminal enterprise involving the distribution of bath salts at the time the warrant was issued. From this inference, the magistrate could have reasonably concluded that contraband and evidence pertaining to Taylor's criminal activity would be found inside of his home when the police executed the warrant.

### III. CONCLUSION

In summary, we conclude that the search warrant authorizing the search of Taylor's residence at 6555 Pounding Mill Branch Road was supported by probable cause. The facts alleged by Perry in his affidavit supporting his request for the warrant and in his sworn testimony before the magistrate established a probability that Taylor would accept the package upon delivery and that contraband and evidence of criminal activity would be found in his home.

For these reasons, we affirm the circuit court's decision denying Taylor's motion to suppress the

evidence found at his residence.[9]

Affirmed.

---

[9] Although both parties addressed the application of the good faith exception outlined in Leon, 468 U.S. 897, in their appellate briefs, our resolution of this case does not require us to address this issue. While we express no opinion as to the applicability of the good faith exception under the facts of this case, we acknowledge that a decision concerning that exception may have provided a narrower holding. See Johnson v. Commonwealth, 45 Va. App. 113, 117 n.3, 609 S.E.2d 58, 60 n.3 (2005) (noting our "desire to decide [cases] on the best and narrowest ground available"). "However, we also believe that consistently sidestepping the issue of probable cause in favor of applying the good faith exception will inevitably permit the exception to swallow the rule." Anzualda, 44 Va. App. at 774 n.3, 607 S.E.2d at 754 n.3. As the present case involved a "novel question of law," we elected to address the merits of this case to provide guidance to magistrates and law enforcement officers who may be confronted with this issue in the future. See id.