UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Russell and Senior Judge Haley
Argued at Fredericksburg, Virginia


JONATHAN LAMAR MARKS

v.        Record No. 0897-16-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE WESLEY G. RUSSELL, JR.
APRIL 25, 2017


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Douglas L. Fleming, Jr., Judge[1]

Bonnie H. Hoffman, Deputy Public Defender, for appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Jonathan Lamar Marks, appellant, was found guilty by a jury of breaking and entering with

the intent to commit larceny in violation of Code § 18.2-91, possession of burglary tools in violation

of Code § 18.2-94, destruction of property in violation of Code § 18.2-137, wearing a mask in

public in violation of Code § 18.2-422, and attempted grand larceny in violation of Code

§§ 18.2-26 and -95.  On appeal, he contends the trial court erred in finding the search warrants

executed at his apartment on Beechwood Terrace were supported by probable cause and that the

court erred in denying him a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).  For the

reasons that follow, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Honorable Burke F. McCahill presided over the proceedings that are the subject of
this appeal.

BACKGROUND

During the early morning hours of August 2, 2015, a digital video recorder outside a Wells Fargo bank in Ashburn captured an individual wearing dark pants, a dark shirt, and a black mask breaking into the drive-thru ATM. According to the video and trial testimony, the individual was using a crowbar, a sledgehammer, various other hand tools, and "what looked to be a grinder" to "basically destroy" the ATM. The video also showed the individual spray paint one of the video cameras, resulting in some images being obscured. Nevertheless, the video revealed the individual wearing a baseball hat with a logo, a Nike logo on a sneaker, and an Air Jordan logo on another article of clothing. The recording depicted the individual crawling through the ATM and entering the ATM cash room where currency is stored.

Deputy John Chavez and another officer were dispatched to the bank. Chavez saw the suspected burglar, but could not recognize the individual except to described him as an African-American male. After the suspect eluded, Chavez secured the perimeter of the crime scene until additional law enforcement arrived. FBI agents and lead detective Colette Cunningham conducted a preliminary survey of the scene. Inside the bank they located two sledgehammers. Outside, they found a pry bar, a black Nike backpack, and a can of orange spray paint beneath the backpack. The backpack contained, among other things, a box cutter, a black Samsung cell phone, black socks, and a "minute key."

On August 3, 2015, Detective Cunningham applied for a search warrant for appellant's Beechwood Terrace apartment. Her supporting affidavit read:

> On August 2, 2015 at approximately 0412 hrs, LCSO responded to a bank alarm at the Wells Fargo Bank . . . in Ashburn, VA. Upon arrival, an unknown subject was seen fleeing the area from the ATM machine. The ATM was dismantled and power tools and cord were located nearby. There was neon orange spray paint on the front window of the ATM where the cameras were located. The subject was seen coming from the northern end of the bank area when approaching on foot. The subject was also seen leaving

- 2 -

and returning multiple times with tools from the northern side of the building . . . . A backpack was located by a bush on the northern end within view outside the bank. Under the backpack was a can of Rustoleum neon orange spray paint which was consistent with the paint used to obscure the camera on the ATM. Inside the backpack was a Black Samsung cellular phone which was identified as number 703-457-0396. *Further analysis of the phone revealed text messages referring to "Jon" or "Jonathon" and an address of "20271 Beechwood Terr."* A text message sent at 0100 hrs on August 2, 2015 states, "Door should've been unlocked. Gotta go take care of something[.]" *LEO databases link Jonathon Marks to 20271 Beechwood Terrace #103. Jonathon Lamar Marks has a criminal history including thefts and burglaries to dwellings. Based on the above facts, Your Affiant believes the cell phone left on scene has been used by Jonathon Marks of 20271 Beechwood Terr[.] #103.* Your Affiant is requesting a search of 20271 Beechwood Terrace in Ashburn, VA to further the pending investigation.

(Emphasis added).

A magistrate issued a search warrant at 4:53 p.m. authorizing a search for, among other things, a dark-colored hat and outerwear, Nike brand tennis shoes, a facial mask or bandana, any indicia of occupancy, and all burglarious tools. As a result of the search, officers recovered black Nike shoes from a bedroom, and a black "Polo" cap and black sweatpants in the bottom of a clothing hamper. Appellant was present when the search took place, and upon questioning by Detective Cunningham, he denied any involvement in the burglary.

During the search, police observed other possible evidence related to the burglary and obtained a second warrant allowing them to search for evidence connecting appellant to the Wells Fargo bank. The affidavit Detective Cunningham submitted was substantially identical to the first affidavit, except for the additional following language:

A key found at the scene matches a key found in the execution of the initial search warrant. Subject stated he does not know where Wells Fargo is, however, financial document/receipts were located in execution of initial search warrant.[2]

---

[2] Evidence at trial would establish that appellant previously had used the Wells Fargo branch in question.

The second warrant authorized officers to search for "keys, financial and purchase receipts from Wells Fargo bank and any other evidence of Wells Fargo transactions." Pursuant to this second search, officers recovered a "minute key;" a purchase copy of a Wells Fargo cashier's check (Ashburn branch) from Claribel Pinedo, appellant's estranged girlfriend, to Joel Abrhamson; an earning statement in the name of Jonathan Marks; and a United States Priority Mail receipt bearing appellant's name and the Beechwood Terrace address.

Prior to trial, the court held a hearing on appellant's motion to suppress the evidence recovered from the Beechwood Terrace apartment. Appellant argued that because the text message connecting appellant to the Beechwood Terrace residence was sent nearly six months prior to Detective Cunningham swearing out the affidavit for the warrant, the information for the warrant was stale. "That text message on February 7th we argue is insufficient for purposes of obtaining the probable cause from the magistrate here because of the fact that it is a text message that is out of date. It is too old to support the nexus that is required." Appellant also maintained that the items searched for could be located in any home, and therefore the description of them was not specific enough to satisfy the warrant requirement. Finally, appellant alleged that, because the detective "recklessly omitted" the date of the six-month-old text message connecting appellant to the Beechwood Terrace apartment and omitted certain facts about appellant's criminal history, appellant met his burden requiring the court to conduct a Franks hearing. Upon questioning by the trial court, appellant's counsel acknowledged that the detective did not make a false statement to the magistrate; rather, appellant asserted that she recklessly omitted information. The court denied both motions stating from the bench the following:

> The motion to suppress first is denied. I find there is sufficient specificity and sufficient detail temporal as well as a specificity as items in the scope of the search is reasonable and the affidavit is sufficient for finding of probable cause. I think there is sufficient probable cause for the magistrate to have issued this. I think an offense was sufficiently described.

> With respect to the <u>Franks</u> hearing, I find that there has been an insufficient preliminary showing by the Defendant by preponderance of the evidence of any intentional or reckless falsity by way of commission or omission.
>
> There's just no evidence of any intent to in any way mislead or deceive.

At trial, a special agent employed by the FBI was called to testify as an FBI certified computer forensic examiner. The agent was able to extract data from the recovered cell phone, including the cell phone's number and the date and content of text messages sent and received from the cell phone. Phone records from the phone indicate that a text message "Door should[']ve been unlocked. Gotta go take care of something" was sent from the cell phone approximately one hour before the burglary began. Numerous other incoming messages refer to the recipient as "Jon" or "Jonathan." In addition, a sent text message on February 7, 2015 contained the address "20271 Beechwood Ter. Ashburn, Va. 20147." The next incoming message read, "Be there in 20," and a subsequent outgoing message read, "Apt 103."

The trial court received an investigator with the Loudoun County Fire Marshal's Office as an expert in "the interpretation of cell phone records and the mapping of cell phone records." The expert testified that the phone moved from the area of the Beechwood Terrace address around 1:15 a.m. to an area north and west of that location. The expert opined that the next usage of the phone occurred at 5:00 a.m. The expert believed this occurred when the phone was in the vicinity of the bank where it was ultimately located.

With the fruits of the search warrants available as evidence and the other evidence presented, the jury convicted appellant of the various charges, and he was sentenced to three years and seven months of active incarceration. This appeal follows.

ANALYSIS

I. Standard of Review

In reviewing a trial court's ruling on a motion to suppress, this Court views the evidence "in the 'light most favorable to . . . the prevailing party below,' . . . and the decision of the trial judge will be disturbed only if plainly wrong." Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994) (quoting Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)). "A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that [the appellate court] review[s] de novo on appeal." McCain v. Commonwealth, 275 Va. 546, 551, 659 S.E.2d 512, 515 (2008). In making its determination, this Court must give deference to the trial court's factual findings and "independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." Id. at 552, 659 S.E.2d at 515. "The burden is on the defendant to show that the denial of his suppression motion . . . was reversible error." McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001).

II. Probable Cause and the Issuance of the Initial Search Warrant[3]

"The Fourth Amendment of the United States Constitution requires that a search warrant be based upon probable cause." Sowers v. Commonwealth, 49 Va. App. 588, 595, 643 S.E.2d 506, 510 (2007). It is axiomatic that the probable cause standard requires less than conclusive proof. As we previously have noted, "the probable cause standard does not demand any showing that a police officer's belief regarding criminal activity be correct or more likely true than false."

---

[3] Appellant notes that the issuance of the second search warrant was predicated on items seen during execution of the first search warrant, and thus, the second search warrant is wholly derivative of the first search warrant. According to appellant, if the first search warrant was improperly issued, the second search warrant is fatally flawed as well. Likewise, if the first search warrant was validly issued, the second suffers from no defect.

Byrd v. Commonwealth, 57 Va. App. 589, 595, 704 S.E.2d 597, 599-600 (2011) (*en banc*) (internal quotation marks and citations omitted).

"For a search warrant to be supported by probable cause, 'the crucial element is . . . whether it is reasonable to believe that the items to be seized will be found in the place to be searched.'" Cunningham v. Commonwealth, 49 Va. App. 605, 613, 643 S.E.2d 514, 518 (2007) (quoting United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993)). "Thus, the affidavit supporting the issuance of the warrant for a residence must provide a nexus between the contraband sought and the place to be searched." Id. "When an affidavit fails to establish, with a fair probability, a link between contraband and the appellant's residence, a warrant to search the residence is not supported by probable cause." Id.

"[T]he existence of probable cause is determined by examining the totality-of-the-circumstances." Anzualda v. Commonwealth, 44 Va. App. 764, 774, 607 S.E.2d 749, 754 (2005) (*en banc*). A magistrate's review of a search warrant affidavit is not "technical," but rather, considers "factual and practical considerations in every day life on which reasonable and prudent men, not legal technicians, act." Garza v. Commonwealth, 228 Va. 559, 564, 323 S.E.2d 127, 129 (1984) (quoting Saunders v. Commonwealth, 218 Va. 294, 300, 237 S.E.2d 150, 155 (1977)). "[T]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Anzualda, 44 Va. App. at 774-75, 607 S.E.2d at 754 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "When determining whether probable cause exists, *the magistrate may draw reasonable inferences from the material supplied to him.*" Id. at 775, 607 S.E.2d at 754 (emphasis added). On appeal, this Court "must grant 'great deference' to the magistrate's interpretation of the predicate facts supporting the issuance . . . and to the determination of

whether probable cause supported the warrant." Janis v. Commonwealth, 22 Va. App. 646, 652, 472 S.E.2d 649, 652 (1996). "This deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." Anzualda, 44 Va. App. at 775, 607 S.E.2d at 754.

Applying these standards to the affidavit submitted to obtain the first search warrant, the magistrate, based on the information provided, reasonably could draw the following inferences: (1) the perpetrator of the crime had been in possession of the backpack and the items it contained on the night in question; (2) the perpetrator had used the phone to send a text message shortly before the activities at the bank began; (3) the owner of the phone found in the backpack, and thus the perpetrator, was a man named "Jon" or "Jonathon;"[4] (4) the owner of the phone resided at 20271 Beechwood Terrace; and (5) that, based on a review of the database maintained by law enforcement, appellant, who is named Jonathan, lived at the Beechwood Terrace address. Taken together, the information in the affidavit and these reasonable inferences allowed the magistrate "to believe that the items to be seized will be found in the place to be searched." Cunningham, 49 Va. App. at 613, 643 S.E.2d at 518 (quoting Lalor, 996 F.2d at 1582).

Appellant, conceding that all of the information provided to the magistrate was true, argues that the detective omitted certain details regarding the information. Specifically, he argues that the inferences drawn were unreasonable and that probable cause was not established because the affidavit fails to inform the magistrate: (1) that only nine of the 355 text messages on the phone referenced some variant of "Jon;" (2) the text message referencing the Beechwood Terrace address did not include a reference to some variant of "Jon;" (3) how appellant is

---

[4] Appellant attaches significance to the fact that he spells his name "Jonathan" and not "Jonathon" as the detective spelled the name in the affidavit. Under these circumstances, the trial court was free to treat the discrepancy as a mere spelling mistake that did not undermine the sufficiency of the information that was utilized to obtain the search warrant.

"linked" in the LEO database to the Beechwood Terrace address; and (4) that the text message referencing the Beechwood Terrace address was taken from a text message sent in February 2015, nearly six months before the issuance of the search warrant. Appellant argues that, if the omitted information had been provided, the magistrate's finding of probable cause and the inferences on which the finding was based would have been unreasonable. We disagree.

Individually, there is nothing misleading about the alleged omissions. For example, common experience and common sense suggest that there is nothing unusual about some, if not an overwhelming majority, of text messages on a phone omitting a person's name. Text messages tend to be short, informal communications. Because individual text messages are often parts of serial communications between two individuals, it is not uncommon for messages to omit the sender's name in the body of the message (often because messages are exchanged among people whose contact information is stored in the recipient's phone resulting in the phone identifying the sender). Given these realities, the multiple text messages using some variant of "Jon" link the phone to someone known as "Jon" and there is nothing inherently misleading about not identifying the number of messages that do not contain such a reference.

Similarly, there is nothing inherently misleading in the detective not indicating that there was no reference to "Jon" in the text message that set out the Beechwood Terrace address. As noted above, it would be neither surprising nor unusual for text messages not to include the sender's name as part of the message. The information set out in the affidavit establishes some link between the phone and the Beechwood Terrace address whether or not the message also contains a reference to "Jon."

Appellant next attacks the affidavit's reference to the law enforcement database linking appellant to the Beechwood Terrace address. Specifically, appellant argues that the potential ambiguity of "link" means "the magistrate received no more an indication from the affidavit's

statement that [appellant] *currently* lives at that address than that he was *once a visitor* there for a few hours when the police responded to a noise complaint."

If the relevant standard were beyond a reasonable doubt, appellant's argument might have some merit. The probable cause standard is far less exacting, and the statement that the law enforcement database links appellant, named "Jonathan," to an address that is also linked to the phone is more than sufficient to establish probable cause to search the address. Furthermore, contrary to appellant's assertion, the Beechwood Terrace address is identified as being his residence on the face of the affidavit because the detective included in the affidavit the statement that she believed that "the cell phone left on scene has been used by Jonathon Marks *of* 20271 Beechwood Terr[.] #103." (Emphasis added). "Of" when used with an address is generally understood as indicating that the person resides at the address. Accordingly, the information provided in the affidavit sets forth the detective's belief, gleaned at least in part from review of the law enforcement database, that appellant lived at the Beechwood Terrace address. Accordingly, there was nothing misleading about the alleged omission or the manner in which the affidavit "linked" appellant to the Beechwood Terrace address.

Appellant also argues that the failure to state in the affidavit that the text message referencing the Beechwood Terrace address was almost six months old at the time of the crime prevented the magistrate from concluding the information was stale, resulting in an absence of probable cause. In support of this argument, appellant relies heavily on our decision in Anzualda.

In Anzualda, an officer applied for a warrant to search Anzualda's residence for a pistol and ammunition used in a homicide. The affidavit alleged that suspects in the homicide told a confidential informant that the pistol would be in Anzualda's house because Anzualda traded marijuana for the pistol. 44 Va. App. at 771, 607 S.E.2d at 752. Of particular note, there was a

nearly six-month gap between the date of the murder and the issuance of the search warrant, leading Anzualda to argue that "there [was] no way to conclude that the evidence [police] wanted to seize or look for [was] at [Anzualda's] residence." Id. at 772, 607 S.E.2d at 753. This Court found that probable cause had not been established because the affidavit did not provide a time frame as to when the statement was made or when the alleged trade took place and "[t]he only date in the warrant merely gives the date on which the murders occurred . . . ." Id. at 776, 607 S.E.2d at 755.

Although the instant case has a nearly six-month time gap in common with Anzualda, the analysis does not turn merely on the passage of time.

> "Generally, 'there is no fixed standard or formula establishing a maximum allowable interval between the date of events recited in an affidavit and the date of a search warrant.'" [Anzualda, 44 Va. App. at 776, 607 S.E.2d at 755.] "Rather, we must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized" to determine whether a warrant was impermissibly based on stale information. Id. (quoting Perez v. Commonwealth, 25 Va. App. 137, 142, 486 S.E.2d 578, 581 (1997)).

Taylor v. Commonwealth, 66 Va. App. 619, 642, 790 S.E.2d 252, 263 (2016).

We determined that the affidavit in Anzualda was stale because it recited an isolated drugs-for-gun transaction that occurred months earlier and failed to provide any basis to infer that the weapon would still be located at the location to be searched. 44 Va. App. at 777, 607 S.E.2d at 755. In comparison, the affidavit in this case described an offense that had occurred within forty-eight hours and sought items that one would expect to still be at the residence if the residence were linked to the crime. The time gap here dealt with the address and not the items associated with the commission of or the fruits from the crime. Probable cause determinations allow for the common sense determination that residences are relatively static and are more likely to remain unchanged/unmoved over a period of time than individual items of contraband

- 11 -

associated with crimes. To find otherwise would render most, if not all, searches for people or things at a "last known address" constitutionally infirm. This is simply not the law. Accordingly, the omission from the search warrant affidavit of the date of the text message that included the Beechwood Terrace address was not misleading and did not defeat a finding of probable cause.

The individual failure of the omissions alleged by appellant to negate probable cause is magnified when all of the information is viewed in its totality. To find that probable cause to search the Beechwood Terrace address did not exist, one has to accept an incredible string of coincidences. Specifically, it strains credulity to believe that mere coincidence explains that the perpetrator had access to and used a phone on the night of the crime that just happened to be linked both to a user named "Jon" and to the Beechwood Terrace address where appellant, a man named "Jonathan" who previously has been investigated for "thefts and burglaries to dwellings," happened to live. These circumstances may not be sufficient in and of themselves to establish that appellant was the perpetrator beyond a reasonable doubt, but they provided more than a sufficient basis for a magistrate "to believe that the items to be seized will be found in the place to be searched," Cunningham, 49 Va. App. at 613, 643 S.E.2d at 518 (quoting Lalor, 996 F.2d at 1582), and therefore, the trial court did not err in concluding that the search warrant was supported by probable cause. [5]

---

[5] We note that nothing in the record suggests that the detective did not have an objectively reasonable belief that she had provided sufficient information to obtain the search warrant or that the search warrant was anything other than valid. In fact, her decision to seek the second search warrant demonstrates her fidelity to the Fourth Amendment's warrant requirement. Accordingly, even if we were to disagree with the trial court regarding the magistrate's finding of probable cause, appellant would not be entitled to suppression of the evidence discovered as a result of the search warrant. See United States v. Leon, 468 U.S. 897 (1984) (setting forth the good faith exception to the warrant requirement).

III. Request for a <u>Franks</u> Hearing

In <u>Franks</u>, the United States Supreme Court addressed whether "a defendant in a criminal proceeding [has] the right . . . subsequent to the *ex parte* issuance of a search warrant, to challenge the truthfulness of factual statements made in an affidavit supporting the warrant . . . ." 438 U.S. at 155. The Court held that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

<u>Id.</u> at 155-56. Subsequent cases have expanded the doctrine beyond affidavits containing outright falsehoods, entitling a defendant to a <u>Franks</u> hearing "when affiants omit material facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." <u>United States v. Colkley</u>, 899 F.2d 297, 300 (4th Cir. 1990) (internal quotation marks and citation omitted); <u>see also</u> <u>Williams v. Commonwealth</u>, 26 Va. App. 612, 618, 496 S.E.2d 113, 116 (1998) (recognizing that "<u>Franks</u> protects against omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*, the magistrate" (internal quotation marks and citation omitted)).

An affidavit supporting an application for a search warrant is entitled to a strong presumption of validity. <u>Franks</u>, 438 U.S. at 171. As the Virginia Supreme Court has noted,

> [t]he United States Supreme Court and all circuits of the United States Court of Appeals have held that a defendant is not entitled to a <u>Franks</u> hearing unless the defendant makes a substantial preliminary showing that the affidavit for the search warrant contains deliberately false or recklessly false misstatements or omissions necessary to a finding of probable cause.

<u>Barnes v. Commonwealth</u>, 279 Va. 22, 33, 688 S.E.2d 210, 216 (2010). "Allegations of negligence or innocent mistake are insufficient" to warrant a hearing on the issue. <u>Franks</u>, 438

- 13 -

U.S. at 171. Furthermore, in the case of alleged omissions, "[t]he mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit. Franks protects [only] against omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*, the magistrate." Colkley, 899 F.2d at 301 (citations omitted). Finally, the defendant must also show "that the falsehood or omission negated the basis upon which the probable cause determination was made." Gregory v. Commonwealth, 46 Va. App. 683, 694, 621 S.E.2d 162, 168 (2005).

The trial court determined that appellant failed to make the requisite showing. In denying the request for a Franks hearing, the trial court found "no evidence of any intent to in any way mislead or deceive" on the part of the detective when she filed the first affidavit. This finding is "not reversible unless plainly wrong or not supported by the evidence." Moats v. Commonwealth, 12 Va. App. 349, 355, 404 S.E.2d 244, 247 (1991). Based on the record before us, we cannot say that the trial court erred in reaching this conclusion. Accordingly, we affirm the trial court's judgment regarding appellant's entitlement to a Franks hearing.

CONCLUSION

For the foregoing reasons, we find that the trial court did not err in denying appellant's motion to suppress and did not err in denying appellant's motion for a Franks hearing. Accordingly, appellant's convictions are affirmed.

Affirmed.