COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Elder and Clements
Argued at Salem, Virginia


VICTOR GARNETTE CUNNINGHAM

v.        Record No. 0069-06-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE JAMES W. BENTON, JR.
APRIL 24, 2007


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Mosby G. Perrow, III, Judge

Brian R. Moore, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Karen Misbach, Assistant Attorney General II (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Victor Garnette Cunningham appeals his conviction for possession of marijuana with the

intent to distribute.  Cunningham contends the trial judge erred in refusing his pre-trial motions to

suppress (i) evidence seized from his residence pursuant to a search warrant and (ii) statements he

made to the police officer.  We agree that the trial judge erred in denying his motion to suppress the

evidence found in Cunningham's residence during the warrant search, and, thus, we reverse the

conviction.

I.

Under well-established principles, when reviewing the trial judge's denial of a motion to

suppress evidence, we must consider the evidence in the light most favorable to the

Commonwealth, the prevailing party at trial.  See Jackson v. Commonwealth, 267 Va. 666, 672,

594 S.E.2d 595, 598 (2004).  So viewed, the evidence proved police officer Wayne Duff activated

his lights and siren when he observed an automobile traveling erratically.  After a pursuit, he

arrested the driver, Victor Garnette Cunningham, for driving in a willful and wanton disregard of an officer's signal to stop. Cunningham apologized for fleeing and explained he did so because he did not have a driver's license and was the subject of an outstanding warrant for his arrest in another city.

Another police officer arrived and searched Cunningham incident to the arrest. He found a plastic bag of green plant material, a torn plastic bag, and $133. Searching the automobile, Officer Duff found small screens used in marijuana smoking devices, empty plastic bags, a lighter, a razor in a duffel bag, and a list of names he later learned to be customers of a lawn care service.

After the arrest, Officer Duff told Cunningham he "would like to have the opportunity to discuss with him what transpired." When he began to advise Cunningham of Miranda rights, Cunningham informed him that he wanted his lawyer present. While waiting for the magistrate, Cunningham asked if the officer had found any outstanding warrants for his arrest. The officer told Cunningham the record search had not revealed any warrants. The officer then began discussing with Cunningham the search warrant he intended to obtain and asked if he would find marijuana if he searched Cunningham's house. During this discussion, Cunningham said "he had a couple [of] bags in his room on the floor."

After this discussion with Cunningham, Officer Duff obtained a warrant to search Cunningham's residence. In pertinent part, the officer's affidavit in support of a search warrant for Cunningham's residence stated as follows:

> On Wednesday, February 02, 2005, I attempted to stop a vehicle for a traffic offense and the vehicle fled attempting to evade me. The operator (and only occupant) of the vehicle, Victor Garnett Cunningham . . . , then fled on foot. When Cunningham was taken into custody, he was found to have marijuana on his person; he was also found to have a plastic baggie corner with suspected cocaine residue on his person. In searching his vehicle subsequent to arrest, I located a razor blade, several empty plastic baggies that are consistent with drug packaging, various butane lighters, and several small brass screens that are commonly used in smoking devices. It is

this affiant's experience that people that use marijuana often keep marijuana as well as devices used to ingest marijuana in their residences.

From my training and experience, I am aware that cocaine is sold in small quantities and is easily concealed on individuals as well as within a residence.

＊     ＊     ＊     ＊     ＊     ＊     ＊

This affiant has been a police officer for twelve years and has made numerous marijuana and cocaine arrests. I was assigned to the Narcotics Strike Force and the Vice / Narcotics Unit for five years.

The affidavit did not refer to the information the officer later testified he learned from his discussion with Cunningham. The affidavit and the warrant identified the object of the search to be "[c]ocaine, marijuana, and paraphernalia associated with the possession and *use* of cocaine and marijuana." Several hours after the warrant was executed by searching the residence, the police obtained an arrest warrant charging Cunningham with possession of marijuana with the intent to distribute it. The record contains no indication of a charge for cocaine.

Denying Cunningham's motions to suppress the evidence, the trial judge ruled, in part, as follows:

[T]he affidavit afforded probable cause to issue the warrant. The affidavit of Captain Duff contained sufficient objective facts from which the magistrate reasonably could infer or find the probability of drugs or evidence of drug trafficking would be found in Mr. Cunningham's residence or room. And I think what Officer Duff knew in this case [as] to what was in the affidavit, at the time they searched the apartment, the [Leon] exception would apply.

At trial, the prosecutor presented evidence of the circumstances surrounding Cunningham's arrest: his flight, the items found in his automobile, the items found on his person, and his conversation with Officer Duff. The Commonwealth's witnesses also testified that when police officers executed the search warrant at Cunningham's residence, they found two digital scales, empty plastic bags, thirteen plastic bags containing marijuana, marijuana on the

- 3 -

dresser, a film canister containing marijuana, a smoking device, a mint tin containing marijuana, a pager, and $1,201. In all, police found .693 ounce of marijuana in Cunningham's residence, and 1.7 grams of marijuana on his person. Cunningham testified that he possessed marijuana for personal use, not with the intent to sell it.

At the conclusion of the evidence, the jury convicted Cunningham of eluding a police officer and possession of marijuana with the intent to distribute.[1] Cunningham appeals his conviction for possession of marijuana with intent to distribute, contending the trial judge erred by denying his motions to suppress the evidence found in his residence and the statements he made to Officer Duff.

II.

Cunningham challenges the search warrant's validity, arguing the affidavit supporting it failed to provide specific facts connecting Cunningham's residence to the marijuana seized upon his arrest. He further contends the good faith exception of United States v. Leon, 468 U.S. 897 (1984), does not apply because the magistrate abandoned her judicial role and the warrant was so lacking in indicia of probable cause that any official belief in its existence was unreasonable. The Commonwealth argues that, although no Virginia cases hold that an "inference of contraband in the residence" can be drawn from a user's possession of drugs, case decisions do hold that people, in general, tend to keep their illicit possessions in their residences and that "drug traffickers" do the same. Without addressing the probable cause issue, the Commonwealth argues the Leon good faith exception applies because the officer's belief that the affidavit

---

[1] Although Cunningham's notice of appeal included his misdemeanor conviction for eluding a police officer, Code § 46.2-817(A), and his brief states that he appealed his "convictions," he failed to make any argument in regards to his misdemeanor conviction. Thus, we only address his appeal of his conviction for possession of marijuana with intent to distribute. See Rules 5A:12 and 5A:20 (limiting review to questions presented in the petition for appeal and requiring the opening brief to contain the "principles of law, the argument, and the authorities relating to each question presented").

established probable cause was not unreasonable and because the affidavit provided a minimal nexus between drugs and Cunningham's residence.

## Probable Cause

The Fourth Amendment of the United States Constitution provides that "no Warrants shall issue, but upon probable cause." Applying a "totality-of-the-circumstances analysis" to a magistrate's consideration of a warrant application, the Supreme Court has held that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a particular crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). This determination of probable cause must be based on objective facts, United States v. Ross, 456 U.S. 798, 808 (1982), and reasonable inferences drawn from those facts. Gates, 462 U.S. at 240.

In appealing a trial judge's denial of a motion to suppress evidence seized during a warrant search, Cunningham bears the burden of showing that the ruling constituted reversible error. Anzualda v. Commonwealth, 44 Va. App. 764, 773, 607 S.E.2d 749, 754 (2005) (en banc). As a reviewing court, we must determine whether "the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." Gates, 462 U.S. at 236 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). In our review of this issue, we "must grant 'great deference' to the magistrate's interpretation of the predicate facts supporting the issuance . . . and to the determination of whether probable cause supported the warrant." Janis v. Commonwealth, 22 Va. App. 646, 652, 472 S.E.2d 649, 652 (1996).

The existence of probable cause to arrest an individual does not ipso facto give rise to probable cause to search that individual's residence. Steagald v. United States, 451 U.S. 204, 212-13 (1981). For a search warrant to be supported by probable cause, "the crucial element is

not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993) (citing Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978)). Thus, the affidavit supporting the issuance of the warrant for a residence must provide a nexus between the contraband sought and the place to be searched. Janis, 22 Va. App. at 652, 472 S.E.2d at 652. When an affidavit fails to establish, with a fair probability, a link between contraband and the appellant's residence, a warrant to search the residence is not supported by probable cause.

This Court, along with many others, has held that a magistrate may infer from objective facts that a connection exists between a person engaged in "drug trafficking" and items within his or her residence.

> A magistrate is entitled to draw reasonable inferences about where incriminating evidence is likely to be found, based on the nature of the evidence and the type of the offense. In the case of drug dealers, evidence of that on-going criminal activity is likely to be found where the dealer resides. Thus, the magistrate reasonably could infer the probability that drugs, or drug paraphernalia, or records, or other evidence of [the suspect]'s suspected drug-related activity would be found in his residence.

Gwinn v. Commonwealth, 16 Va. App. 972, 975-76, 434 S.E.2d 901, 904 (1993) (citations omitted); see, e.g., United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992) (upholding the search warrant because there was a fair probability that drugs would be found in the motel room where a drug dealer resided); United States v. Baldwin, 987 F.2d 1432, 1435-36 (9th Cir. 1993) (recognizing that "in the case of drug dealers, evidence is likely to be found where the dealers live" and that objective facts "established . . . Baldwin was involved in cocaine distribution").

In Anzualda, 44 Va. App. 764, 607 S.E.2d 749, the police obtained a warrant to search Anzualda's residence for a pistol, which they suspected was a murder weapon in another case and which they had been told was traded to Anzualda for marijuana. Id. at 771, 607 S.E.2d at

752. We held in a plurality opinion that a search warrant for the residence lacked probable cause where the affidavit stated Anzualda had traded marijuana in exchange for a pistol. We acknowledged that, as a general rule, evidence is likely to be found where "drug dealers" live, but we distinguished Anzualda because the affidavit only contained an account of an isolated drug transaction and did not suggest that Anzualda was a known drug dealer. Id. at 777-78, 607 S.E.2d at 755-56. Accordingly, we held the affidavit "fail[ed] to provide a sufficient nexus between the item sought (the pistol) and the premises to be searched." Id. at 777, 607 S.E.2d at 755.

In the present case, the affidavit merely asserted the police arrested Cunningham for a non-drug offense, found on his person an unspecified amount of marijuana and "suspected" cocaine residue, and also found in his automobile empty plastic bags, lighters, and several screens commonly used in smoking devices.[2] The affidavit asserted that the warrant was requested to search for items related to "possession and use of cocaine and marijuana." The only nexus provided between Cunningham's residence and contraband seized from Cunningham's presence was the police officer's statements that "people that use marijuana often keep marijuana as well as devices used to ingest marijuana in their residences" and that "cocaine is sold in small quantities and is easily concealed . . . within a residence." The officer did not allege in the

---

[2] Significantly, at the suppression hearing, the prosecutor acknowledged the affidavit did not include Cunningham's admission that he had marijuana in his room. The affidavit also did not state that the officer found what he initially, incorrectly suspected to be a client list in Cunningham's automobile. Although "[a]n affidavit deficient on its face may, under appropriate circumstances, be rehabilitated with . . . omitted facts [that] were actually disclosed to the magistrate under oath or affirmation," Adams v. Commonwealth, 48 Va. App. 737, 747, 635 S.E.2d 20, 25 (2006), the evidence in this case did not establish that the magistrate received any sworn facts outside of the affidavit. As we noted in Adams, "'[a]n obviously deficient affidavit cannot be cured by an officer's later testimony on his subjective intentions or knowledge.'" Id. at 748, 635 S.E.2d at 25 (quoting United States v. Hove, 848 F.2d 137, 140 (9th Cir. 1988)). Thus, in our review of the magistrate's decision, we cannot consider this information and are limited to the facts provided in the affidavit.

affidavit that Cunningham was a drug dealer, and he provided no facts in the affidavit supporting such an inference. Yet, he obtained a warrant to search Cunningham's home for more evidence of marijuana and cocaine.

The magistrate did not have a substantial basis to find probable cause existed to believe that Cunningham, simply by virtue of being a drug user, kept a supply of illegal narcotics or related paraphernalia at home. See Anzualda, 44 Va. App. at 777-78, 607 S.E.2d at 755-56 (where the affidavit lacked probable cause, in part, because it alleged facts that only permitted an inference that Anzualda had conducted a single drug transaction and did not allege that he was a known drug dealer); see, e.g., United States v. McPhearson, 469 F.3d 518 (6th Cir. 2006) (holding the inference that drugs or drug paraphernalia were in the home was unreasonable where police found cocaine in McPhearson's pocket outside of his home, but the affidavit alleged no facts suggesting he was a known drug dealer); United States v. Hodge, 246 F.3d 301, 306 (3d Cir. 2001) (noting that the "amount of crack cocaine Hodge possessed indicated he was 'involved in selling drugs, rather than merely using them'"); United States v. Stout, 641 F.Supp. 1074, 1078 (N.D. Cal. 1986) (holding that the affidavit did not provide probable cause to search a suspect's residence where it provided only information that she had been arrested earlier with cocaine and that an uncorroborated confidential informant said she was involved in large-scale drug distribution); State v. Rabb, 920 So.2d 1175, 1187-88 (Fla. 2006) (holding that the police lacked probable cause to search defendant's home for marijuana where they found three marijuana cigarettes on his person and marijuana cultivation books in his car); People v. Pressey, 126 Cal. Rptr. 2d 162, 169 (2002) (concluding that probable cause to search a suspected drug user's residence requires more than the inference that drug users often keep drugs at home); Ex parte Perry, 814 So.2d 840, 843 (Ala. 2001) (holding that "a defendant's possession of illegal drugs does not, without more, make reasonable a search of the defendant's residence"); State v.

Johnson, 578 N.W.2d 75, 82 (Neb. 1998) (holding that the warrant to search Johnson's house lacked probable cause where police found a vial of methamphetamine on his person); State v. Doile, 769 P.2d 666, 672 (Kan. 1989) (holding that the police did not have probable cause to search Doile's residence where they found marijuana in his car); State v. Rangitsch, 700 P.2d 382, 388 (Wash. 1985) (stating that the officer's averment in the affidavit that "habitual users of drugs keep drugs and paraphernalia in their home" was "mere speculation").

Important Fourth Amendment considerations require proof of a constitutionally sufficient nexus between the contraband and the place to be searched. See Gates, 462 U.S. at 236 (holding that the magistrate must have a "'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing"). This requires more than evidence that a person is a drug user and a police officer's generalized belief that drug users can and often do hide drugs in their homes. First, the magistrate had no basis to believe the generalization that drug users often keep drugs at home applied to Cunningham. The Fourth Amendment's search warrant determination requires analysis of the totality of the circumstances and is not easily amenable to *per se* rules. See United States v. Drayton, 536 U.S. 194, 201 (2002) (noting that *per se* rules are inappropriate when considering the totality of the circumstances). The requirement that an affidavit provide a nexus between the contraband and the residence to be searched would mean very little if this generalization gave probable cause to search the residence of every drug user. Such a *per se* rule would render the Fourth Amendment's probable cause analysis for search warrants virtually meaningless. See generally Richards v. Wisconsin, 520 U.S. 385, 394 (1997) (stating that "[i]f a *per se* exception were allowed for each category of criminal investigation that included a considerable—albeit hypothetical—risk of danger to officers or destruction of evidence, the knock-and-announce element of the Fourth Amendment's reasonableness requirement would be meaningless"). The fact that drug users may sometimes keep contraband

in their homes does not divest magistrates from their duty to determine "whether, *given all the circumstances set forth in the affidavit . . .* , there is a fair probability that contraband or evidence of a particular crime will be found in a particular place." Gates, 462 U.S. at 238 (emphasis added). This affidavit contained no facts specific to Cunningham or his residence indicating drugs would be found in his residence.

Second, the nature of possessing drugs for personal use differs greatly from possession by a drug dealer or trafficker. With drug dealers and traffickers, prospects are greater that their homes contain contraband because those ongoing activities often require a drug supply and a myriad of other tools of the trade, such as scales, packaging materials, and account records. See State v. O'Keefe, 141 P.3d 1147, 1157-58 (Idaho 2006) (holding that the inference to search the home of a drug trafficker "can be reasonable given the large quantities of drugs and the additional items of property typically involved, such as customer lists, sales records, manufacturing equipment and materials, packaging, scales, weapons, and large amounts of cash"); see also Pressey, 126 Cal. Rptr. 2d at 170 (distinguishing drug dealing from drug use for Fourth Amendment purposes because drug dealing poses a greater societal threat than personal usage and the government has more of an interest to search). No facts in the affidavit or inferences drawn from those facts permit the conclusion that drugs would be found in a person's residence solely because that person has used drugs.

For these reasons, we hold the search warrant was not supported by probable cause due to the affidavit's failure to provide a nexus between Cunningham's drug possession and his residence.

## The Good Faith Exception

"In Leon, the United States Supreme Court held that 'suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual

cases in which exclusion will further the purposes of the exclusionary rule.'" Polston v.

Commonwealth, 255 Va. 500, 503, 498 S.E.2d 924, 925 (1998) (quoting Leon, 468 U.S. at 918).

The United States Supreme Court reasoned as follows:

> [T]he exclusionary rule is designed to deter police misconduct
> rather than to punish the errors of judges and magistrates.
>
>       *       *       *       *       *       *       *
>
> In the ordinary case, an officer cannot be expected to question the
> magistrate's probable-cause determination or his judgment that the
> form of the warrant is technically sufficient.

Leon, 468 U.S. at 916, 921. Under the good faith exception, "[w]here a police officer has an

objectively reasonable belief that the issuing magistrate had probable cause to issue the search

warrant, the officer may rely upon the magistrate's probable cause determination and the

evidence will not be excluded." Colaw v. Commonwealth, 32 Va. App. 806, 810, 531 S.E.2d 31,

33 (2000).

There are four circumstances, however, where an officer cannot have an objectively

reasonable belief that probable cause exists for the search and suppression is an appropriate

remedy:

> "(1) Where the magistrate was misled by information in the
> affidavit which the affiant knew was false or should have known
> was false, (2) the issuing magistrate totally abandoned his judicial
> role, (3) the warrant was based on an affidavit 'so lacking in
> indicia of probable cause' as to render official belief in its
> existence unreasonable or (4) where the warrant was so facially
> deficient that an executing officer could not reasonably have
> assumed it was valid."

Id. at 811, 531 S.E.2d at 33 (quoting Atkins v. Commonwealth, 9 Va. App. 462, 464, 389 S.E.2d

179, 180 (1990)); see also Leon, 468 U.S. at 923.

The Supreme Court held that an officer does not "manifest objective good faith in relying

on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official

- 11 -

belief in its existence entirely unreasonable.'" Leon, 468 U.S. at 923 (quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)). In turn, we have held that "as long as there is *some* indicia of probable cause in the underlying affidavit, we will apply the good faith exception [provided that] a reasonable police officer, after assessing the facts set forth in the affidavit, could have believed the warrant was valid." Anzualda, 44 Va. App. at 781, 607 S.E.2d at 757. Thus, for the good faith rule to apply, the affidavit must provide some nexus between the evidence sought and the place to be searched. Janis, 22 Va. App. at 653-54, 472 S.E.2d at 653. Police officers, however, cannot reasonably rely on a "bare-bones" affidavit that sets forth only conclusory allegations without supporting facts, Leon, 468 U.S. at 923 n.24; Colaw, 32 Va. App. at 813, 531 S.E.2d at 34, and they are not "entitled to rely on the judgment of a judicial officer in finding that probable cause exists." Malley v. Briggs, 475 U.S. 335, 345-46 (1986) (applying the same standard of objective reasonableness applied in Leon); see also Leon, 468 U.S. at 922 (noting that "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable"). In other words, the test of good faith is not simply whether the officer obtained the warrant.

As we indicated, the facts failed to establish a sufficient constitutional nexus between Cunningham's possession of the marijuana and his residence. In this case, the affidavit asserts that Cunningham had marijuana on his person and that the officer merely "suspected cocaine residue." No facts indicated Cunningham was engaged in selling or distributing drugs. The officer's affidavit indicated he arrested Cunningham for a traffic offense and suggested Cunningham had these items for his "use" but did not allege the quantity of marijuana. No facts indicated the items Cunningham possessed were from his residence or had a connection to his residence. The officer posited in the affidavit, based on his experience, "that people that use marijuana often keep marijuana as well as devices used to ingest marijuana in their residences"

- 12 -

and "cocaine is sold in small quantities and is easily concealed on individuals as well as within residences." This connection that the officer draws between the items and the residence is merely suppositive and conclusory, and it is not even a minimally sufficient factual nexus between the criminal activity and the residence.

The requirement for an objective factual basis (or a reasonable inference drawn from those facts) to establish probable cause to issue a search warrant means that a finding of probable cause to believe an individual has committed a crime and has in his possession contraband does not necessarily give rise to probable cause to search that individual's residence. The affidavit does not contain any factual allegations from which the magistrate could have found probable cause to believe marijuana, cocaine, or paraphernalia was in Cunningham's residence. Moreover, the quantity and nature of the items and the normal inferences to be drawn from a user's possession of the items likewise fails to establish a nexus.

Thus, the pivotal question is whether a reasonable police officer could have believed the warrant was valid based on the facts in the affidavit. The law is clear on whether searching a person's residence based solely on suspected drug use unconnected to the residence is constitutionally permissible.[3] Every case that we found nationwide addressing this issue held that such a search, based upon the arrest of a user of drugs, violates the Fourth Amendment. Our own jurisprudence has followed suit. In Anzualda, we held that the warrant lacked probable cause, in part, because the affidavit contained information about a single drug transaction, as opposed to repeated transactions or information that Anzualda was a known drug dealer. 44 Va. App. at 777-78, 607 S.E.2d at 755-56. Although Leon provides an exception to the

---

[3] We note that although the Commonwealth argues on appeal that a belief that the affidavit provided probable cause was reasonable because the law is unclear on this issue, the Commonwealth does not attempt to argue that the warrant was supported by probable cause, instead defending the warrant only on the grounds that the good faith exception applies.

exclusionary rule, the decision grounds the exception upon the requirement that police officers possess reasonable knowledge and understanding of the Fourth Amendment's prohibitions. See 468 U.S. at 919 n.20. In light of the law on this issue, a reasonable police officer could not have believed the warrant to search Cunningham's residence was valid based on the facts in the affidavit and the inferences to be drawn from those facts. Thus, we hold the affidavit was so lacking in probable cause as to render official belief in the warrant objectively unreasonable.[4] Accordingly, the good faith exception does not prevent application of the exclusionary rule in this case where probable cause was so lacking.

### III.

For the foregoing reasons, we hold the trial judge erred in denying the motion to suppress the evidence found in Cunningham's house pursuant to the search warrant. Because this holding is dispositive, we do not need to address the other question Cunningham raised on appeal regarding the admissibility of the statements he made to the police officer. We, therefore, reverse the conviction for possession with intent to distribute and remand the case for retrial.

<u>Reversed and remanded.</u>

---

[4] Although Cunningham also argues the magistrate abandoned her judicial role, he has failed to show more than the magistrate issued a deficient warrant. That is not sufficient to prevail under this prong of Leon. See 468 U.S. at 923 (citing Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979)). No evidence proved the magistrate failed to "manifest the neutrality and detachment demanded of a judicial officer when presented with a warrant application." Lo-Ji Sales, Inc., 442 U.S. at 326.