COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Decker, Judges O'Brien and Causey
Argued at Lexington, Virginia


STEVEN NICHOLAS DAWSON

v.      Record No. 1051-23-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE DORIS HENDERSON CAUSEY
SEPTEMBER 10, 2024


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
W. Chapman Goodwin, Judge[1]

Kelsey Bulger, Deputy Appellate Counsel (Virginia Indigent
Defense Commission, on briefs), for appellant.

Sandra M. Workman, Assistant Attorney General (Jason S. Miyares,
Attorney General; William K. Hamilton, Assistant Attorney General,
on brief), for appellee.


Following a jury trial, the Circuit Court of Augusta County convicted Steven Nicholas

Dawson of possession of cocaine, in violation of Code § 18.2-250, two counts of possession with

intent to distribute a Schedule I or II narcotic, in violation of Code § 18.2-248(C), and possession

of a firearm while in possession with intent to distribute a Schedule I or II narcotic, in violation

of Code § 18.2-308.4.  By final order of June 14, 2023, the trial court sentenced him to 20 years

in prison, with 10 years suspended.

On appeal, Dawson contends that the trial court erred in: (1) denying his motion to

suppress certain evidence, (2) denying his request for a *Franks*[2] hearing, and (3) dismissing his

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The Honorable David B. Carson presided over the motion to suppress hearing.

[2] *Franks v. Delaware*, 438 U.S. 154 (1978).

motion to suppress based on Rule 3A:9 as an alternative holding. Finding no error, we affirm the trial court.

## BACKGROUND

On March 23, 2021, a confidential and reliable informant (CRI) informed former Staunton Police Department Investigator Stuart Green that a man staying in Room 118 at the Skyline Motel had illegal narcotics and a firearm in his possession. She gave Green the man's first name, and he determined the man was Dawson based on other information known to the drug task force. The CRI also sent Green pictures of "prepackaged bags of [a] crystal substance." The CRI reported that she had "observed individuals purchasing and selling methamphetamine" in Room 118. She also reported that Dawson was driving a red Kia.

Green provided Augusta County Sheriff's Department Investigator Chris Rosemeier with the CRI's information, and Rosemeier applied for a search warrant. Under its "material facts constituting probable cause" section, the affidavit stated that

> Within the past twelve (12) hours a confidential and reliable informant (CRI) observed individuals purchasing and selling methamphetamine at the aforementioned residence. Further CRI sent pictures of prepackaged bags of [a] crystal substance to a member[] of the Skyline Drug Taskforce. CRI also saw a firearm in the motel as well.

Under the reliability portion of the affidavit, it stated, in pertinent part,

> CRI is confidential and reliable. CRI has provided information in the past that has led to prosecutable narcotics related arrests. CRI is an admitted past user and distributor of methamphetamine and is familiar with the appearance of methamphetamine. CRI has made statements in the past against their own penal interest.

The affidavit added that the suspect(s) had only checked into Room 118 sometime that afternoon. Rosemeier asserted that based on his training and experience "distributors of illegal narcotics often make deliveries of narcotics and pick up proceeds from their sales in vehicles." In his request for a search warrant permitting the search of Room 118 at the Skyline Motel,

Rosemeier also requested that the warrant authorize the search of "all vehicles . . . associated with th[at] residence," so that the police could search for methamphetamine and other illegal drugs, U.S. currency, firearms, and ammunition. The magistrate issued the warrant as requested.

Prior to executing their search, the police learned that Dawson had left the motel. Therefore, the members of the Skyline Drug Task Force waited nearby in unmarked cars for Dawson's return. The police saw Dawson return to the motel driving a red Kia. Dawson parked the car only a few feet from Room 118. The Kia was the only car parked outside that room. After Dawson parked, the police detained him and ultimately searched the Kia.

Rosemeier found a Glock pistol with an extended magazine mounted to the car's steering column, just below the steering wheel. He also found $590 inside Dawson's wallet in the center console. On the front passenger seat, Rosemeier found a "gym bag" containing plastic bags, which in turn contained suspected narcotics. The suspected drugs were collected and sent to the Department of Forensic Science for analysis. Scientific analysis showed that the gym bag contained 11.168 grams of methamphetamine, 1.424 grams of a mixture of heroin and fentanyl, and 0.871 gram of cocaine.

On January 27, 2023, Dawson moved to suppress all evidence obtained during the March 23 search of his vehicle. Dawson asserted that "[t]he search warrant that led to the search" was not supported by probable cause and there was an "[in]sufficient nexus between the items sought [and] the place to be searched." He also contended that the warrant's affidavit "contained errors or omissions which were either intentional or made with a reckless disregard for their truth" and that the search exceeded the scope of the warrant. Although Dawson acknowledged that a police officer's "good faith" may obviate the need to exclude ill-gotten evidence, he made no argument about the applicability of good faith in his case.

The Commonwealth filed a response to Dawson's motion asking that the trial court dismiss the motion under Rule 3A:9. The Commonwealth argued that Dawson's motion did not comply with the specificity requirement of Rule 3A:9 because Dawson failed to argue why the good-faith exception did not apply. On February 7, 2023, the trial court held a hearing on the motion to suppress. Along with the motion to suppress, Dawson requested that the court order a "*Franks* hearing."

Green testified that he knew the CRI to provide reliable information. The CRI provided Green with information for "several months" prior to March 23, 2021, and she "had provided reliable information several times." Green testified that the CRI's information had previously led to both arrests and the seizure of illegal drugs, and he did not know the CRI to have ever lied to him or mislead him.

Green and Rosemeier testified that they knew the CRI had previously used and possibly distributed methamphetamine, but they did not know her to be a current drug user. Additionally, Rosemeier explained that recent drug use by a reliable informant does not "typically cause concern as far as [an informant's] reliability." "Most of the informants" the police rely on have "at some time or another" used or distributed drugs. Green stated that he would not have asked the CRI if she was currently using or selling drugs on March 23rd because she had proven her reliability. Aside from the information the CRI had provided, the police knew the Skyline Motel to "have issues with narcotics" from the "[n]umerous drugs, search warrant [executions] and vehicle take downs" that had previously occurred there. Although he did not provide details, Green also indicated that the police already possessed "other information" on Dawson at the time of the CRI's tip.

When the CRI contacted Green, she was not "working . . . off" any charges through the task force, nor was Green aware whether the CRI had any pending charges. Because her

information resulted in Dawson's arrest and the seizure of a gun and drugs, the CRI later received financial compensation from the task force.

The trial court denied both the motion to suppress and the request for a *Franks* hearing. The court ruled that the warrant was not facially invalid, but that even if it were, the good-faith exception applied. The court, alternatively, granted the Commonwealth's motion to dismiss Dawson's motion for noncompliance with Rule 3A:9. This appeal timely follows.

ANALYSIS

I. The trial court did not err in denying Dawson's motion to suppress the evidence.

"Appellate review of a trial court's denial of a defendant's motion to suppress is de novo when the defendant claims that the evidence sought to be suppressed was seized in violation of the Fourth Amendment." *Glenn v. Commonwealth*, 275 Va. 123, 130 (2008) (citing *Murphy v. Commonwealth*, 264 Va. 568, 573 (2002)). "In performing this review, we consider the evidence 'in the light most favorable to the Commonwealth,' *McCain v. Commonwealth*, 261 Va. 483, 490 (2001), and 'accord the Commonwealth the benefit of all inferences fairly deducible from the evidence.'" *Id.* (quoting *Riner v. Commonwealth*, 268 Va. 296, 303 (2004)). "The defendant bears the burden of establishing that the denial of his suppression motion was reversible error." *Id.* (citing *Murphy*, 264 Va. at 573). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *Cantrell v. Commonwealth*, 65 Va. App. 53, 56 (2015) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)).

A) *The search warrant was supported by probable cause.*

"[P]robable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Jones v. Commonwealth*, 277 Va. 171, 178 (2009)

(alteration in original) (quoting *United States v. Grubbs*, 547 U.S. 90, 95 (2006)). When a search is conducted pursuant to a search warrant, the warrant itself must be predicated upon such probable cause. *See Illinois v. Gates*, 462 U.S. 213 (1983). However, "'[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' for 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search'" so long as the "officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues [is] objectively reasonable." *United States v. Leon*, 468 U.S. 897, 922 (1984) (first quoting *Gates*, 462 U.S. at 267 (White, J., concurring in the judgment); and then quoting *United States v. Ross*, 456 U.S. 798, 823 n.32 (1982)). While "[s]ufficient information must be presented to the magistrate to allow [him] to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others," an informant's tip may constitute such "sufficient information." *Gates*, 462 U.S. at 239.

A magistrate issuing a warrant is only required to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, *including* the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238 (emphasis added).[3] Given this broad discretion granted to a magistrate's determination of

---

[3] Prior to the Supreme Court's ruling in *Gates*, a tip from a informant constituted sufficient probable cause when "the prosecution [could] show 'underlying circumstances' sufficient to support the informant's conclusions and the conclusion of the police that the informant 'was "credible" or his information "reliable."'" *Wright v. Commonwealth*, 222 Va. 188, 191 (1981) (quoting *Aguilar v. Texas*, 378 U.S. 108, 114 (1964)). This dual showing of sufficient veracity and basis of knowledge, established in *Aguilar v. Texas*, 378 U.S. 108 (1964), was "abandon[ed]" in *Gates* when the Court "in [*Aguilar*'s] place reaffirm[ed] the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations." *Gates*, 462 U.S. at 238. While the *Aguilar* standard is still relevant, it is no longer the exclusive test for determining the sufficiency of probable cause predicated on an informant's tip. *See id.*

probable cause, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." *Id.* at 238-39 (alterations in original) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

"The existence of probable cause may be established based upon a combination of the content of the information which the police possess, its degree of reliability, and the degree of credibility of the informer." *Boyd v. Commonwealth*, 12 Va. App. 179, 187 (1991). Here, the police possessed "other information" about Dawson before receiving the CRI's tip. Police knew the Skyline Motel to "have issues with narcotics" from the "[n]umerous drugs, search warrant [executions] and vehicle take downs" that had previously occurred there. The CRI's tip itself alleged that Dawson was in possession of illegal drugs and a gun.

The "reliability of [an] informant's information [is] determined by the nature and detail of the circumstances described and any independent corroboration of those circumstances." *McGuire v. Commonwealth*, 31 Va. App. 584, 595 (2000). The CRI provided police with Dawson's first name after she had "observed individuals purchasing and selling methamphetamine" in Room 118 at the Skyline Motel, identified Dawson as one of those individuals, told police that Dawson was driving a red Kia, informed them that he was in possession of a firearm and drugs, and provided a picture of "prepackaged bags of [a] crystal substance." As someone familiar with illegal drugs, the informant "had a reliable basis for [her] statement" that what she saw was likely illegal drugs. *Gates*, 462 U.S. at 230; *see Boyd*, 12 Va. App. 179 (finding an informant's tip regarding cocaine packaging and distribution at Boyd's residence reliable based on informant's personal use of and familiarity with cocaine). The picture provided in support of her report, her personal knowledge of drug use and packaging, and the police officers' own knowledge of the "issues with narcotics" at the Skyline Motel rendered their information sufficiently reliable when assessed alongside the informant's credibility.

The investigator noted that the CRI had a history of providing reliable information to the police and had provided information in the past that led to prosecutable narcotics-related arrests. *See Polston v. Commonwealth*, 24 Va. App. 738, 745 (1997) (reasoning that prior reliable information given by an informant may be considered in establishing an informant's credibility), *aff'd on other grounds*, 255 Va. 500 (1998).

Thus, given the totality-of-the-circumstances, the Commonwealth demonstrated a "fair probability that contraband or evidence of a crime will be found," by supplying the magistrate with reliable information from a demonstrably credible informant. *Gates*, 462 U.S. at 238. Because this information "'provide[d] the magistrate with a substantial basis for determining the existence of probable cause,'" the reviewing court should "accord[] great deference to [the] magistrate's determination." *Leon*, 468 U.S. at 914-915 (quoting *Gates*, 462 U.S. at 239).

*B) There was a sufficient nexus between the items sought and the places to be searched.*

"For a search warrant to be supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." *Cunningham v. Commonwealth*, 49 Va. App. 605, 613 (2007). "Important Fourth Amendment considerations require proof of a constitutionally sufficient nexus between the contraband and the place to be searched." *Id.* at 616.

Dawson moved to suppress all evidence obtained in the March 23 search of his vehicle. Thus, the question is whether there existed a sufficient nexus between the items sought in the warrant, specifically the drugs, U.S. currency, and firearms, and the place to be searched, the red Kia. The affidavit presented to the magistrate noted that the suspect(s) had only checked into Room 118 sometime that afternoon. Motels, by their nature, are transitory locations. *See United States v. Agapito*, 620 F.2d 324, 331 (2d Cir. 1980) (noting the "transient nature of hotel

guests"). Additionally, Rosemeier indicated in his affidavit that based on his training and experience "distributors of illegal narcotics often make deliveries of narcotics and pick up proceeds from their sales in vehicles." This Court "give[s] deference to the officer's understanding of the situation based on his or her training and experience." *Purdie v. Commonwealth*, 36 Va. App. 178, 186 (2001) (citing *McGuire*, 31 Va. App. at 593). The CRI reliably reported multiple drug sales being made in Room 118 and provided photo evidence of suspected methamphetamine inside the room.

Magistrates are "entitled to draw reasonable inferences about where incriminating evidence is likely to be found, based on the nature of the evidence and the type of offense." *Cunningham*, 49 Va. App. at 613 (quoting *Gwinn v. Commonwealth*, 16 Va. App. 972, 975 (1993)). Based on the CRI's credible report and Rosemeier's attested experience, it was a reasonable inference that any vehicle associated with Room 118 would be associated with its inhabitants, and that if the inhabitants were likely engaged in the sale of illegal narcotics, that the inhabitant's associated vehicles were involved in the deliveries, distributions, or proceeds of the sale of illegal narcotics.

Thus, the facts supported the requisite probability that both Dawson's vehicle and hotel room would possess either illegal drugs or evidence of illegal drug sales. Consequently, the warrant supported a sufficient nexus between the items sought and Room 118 and any vehicles associated with it.

*C) The search did not exceed the scope of the warrant.*

Dawson asserts that the search of his car exceeded the scope of the warrant. He argues that "the officers exceeded the scope of the warrant when they searched [his] car without verifying it was associated with the motel room at issue (room 118)." Based on a review of the record, this allegation falls short.

"Police officers executing a particularized search warrant need not read its scope either narrowly or broadly, only reasonably." *Jeffers v. Commonwealth*, 62 Va. App. 151, 156 (2013). "[T]he officers' interpretation must simply be 'consistent with a reasonable effort to ascertain and identify the place intended to be searched.'" *Id.* (quoting *Maryland v. Garrison*, 480 U.S. 79, 88 (1987)).

The warrant here permitted law enforcement to search "Skyline Motel, Room 118, 2497 Jefferson Hwy, Waynesboro, VA 22980, all persons present, and all vehicles associated with this residence." The CRI provided police with Dawson's name and a description of his car. The police watched Dawson park and exit a car matching the CRI's description immediately outside of Room 118. The building in which Room 118 was located contained only two rooms, and there were no other cars parked immediately outside that building. Thus, it was reasonable for law enforcement to believe that Dawson's vehicle, parked immediately outside of Room 118, would fall within the scope of "all vehicles associated with" Room 118. Further, the police did not search beyond Room 118 or Dawson's vehicle. We hold therefore that the search did not exceed the scope of the warrant.[4]

II. The trial court did not err in denying Dawson's request for a *Franks* hearing.

An appellate court reviews the trial court's application of the law to the particular facts of the case de novo. *Davis v. Commonwealth*, 65 Va. App. 485, 497 (2015). The Supreme Court's holding in *Franks v. Delaware* was explained, in detail, in *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990):

> In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that in certain narrowly defined circumstances a defendant can attack a facially sufficient affidavit. The *Franks* Court recognized a strong "presumption of validity with respect to the affidavit supporting the search warrant," 438 U.S. at 171, and thus

---

[4] In light of our holding, we do not address the trial court's alternate holding regarding Rule 3A:9.

created a rule of "limited scope," *id.* at 167. The rule requires that a dual showing be made which incorporates both a subjective and an objective threshold component. In order even to obtain an evidentiary hearing on the affidavit's integrity, a defendant must first make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Id.* at 155-56. This showing "must be more than conclusory" and must be accompanied by a detailed offer of proof. *Id.* at 171. In addition, the false information must be essential to the probable cause determination: "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* at 171-72. The *Franks* test also applies when affiants omit material facts "with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986).

Moreover, our Supreme court has made it clear that "circuit courts in this Commonwealth should not conduct a *Franks* hearing absent the establishment of the requisite substantial preliminary showing." *Barnes v. Commonwealth*, 279 Va. 22, 33 (2010).

Dawson argues that he "demonstrated, through testimony, that material facts were omitted in reckless disregard of whether the omission thereby made the affidavit misleading." Dawson alleges that the omissions include: the informant's criminal record, financial motivations, drug involvement, drug use, and probation status, and the officers' general ignorance surrounding the informant's current reliability. Yet based on a review of the affidavit, this argument is not convincing.

The affidavit states that the "CRI is an admitted past user and distributor of methamphetamine and is familiar with the appearance of methamphetamine. CRI has made statements in the past against their own penal interest." This statement directly negates the assertion that the affidavit omitted the informant's involvement with and use of drugs. Significantly, the affidavit also includes that the "CRI sent pictures of prepackaged bags of [a]

- 11 -

crystal substance to a member[] of the Skyline Drug Taskforce." By providing pictures of the suspected drugs, the CRI further supported her credibility, which negates the assertion that the officer was ignorant regarding the informant's reliability. Green also testified that he "did not make any promises that [the CRI] was going to be paid for [the] information" and she was not paid until after the investigation. Thus, there was no omission regarding the CRI's financial motivations because the CRI had not received payment or promise of payment for the information she provided at the time the affidavit was filed.

Furthermore, there was no detailed offer or proof "showing that a *false statement* knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Colkley*, 899 F.2d at 300 (emphasis added). Information regarding the CRI's current drug use, which Dawson alleged was omitted from the affidavit, did not affect her reliability and was not essential to the probable cause determination. Thus, based on the record, Dawson failed to make a substantial preliminary showing that the investigators intended to deceive the magistrate or that any omitted material facts rendered the information in the affidavit insufficient to establish probable cause. Therefore, based on Dawson's failure to establish the requisite substantial preliminary showing, the trial court properly followed our Supreme Court's mandate by not conducting a *Franks* hearing.

CONCLUSION

The trial court did not err in denying Dawson's motion to suppress the evidence because the search warrant was supported by probable cause, there was a sufficient nexus between the items sought and the places to be searched, and the search did not exceed the scope of the warrant. Dawson also failed to meet his burden for a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by

Rosemeier in the warrant affidavit, and the trial court properly denied his request for a *Franks* hearing.

*Affirmed.*