COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, AtLee and Malveaux
Argued at Richmond, Virginia

FREDERICK LEWIS MONCREA

v.     Record No. 0398-23-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES
SEPTEMBER 10, 2024

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

Meghan Shapiro, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General, on briefs), for appellee.

After entering into a conditional guilty plea, Frederick Lewis Moncrea was convicted of two

counts of possession with intent to distribute a controlled substance and possession of a firearm by a

nonviolent felon.[1]  On appeal, Moncrea argues that the circuit court erred in denying his motion to

suppress the evidence.  He also argues that his sentencing order is void *ab initio* because the circuit

court ordered him to be under supervised probation after his release from incarceration for a period

that exceeds the limits allowed under Code § 19.2-303.

BACKGROUND

"Under familiar principles of appellate review, we will state 'the evidence in the light

most favorable to the Commonwealth, [as] the prevailing party in the trial court, and will accord

the Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence.'"

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Moncrea did not appeal his conviction for possession of a firearm by a nonviolent felon.

*Sidney v. Commonwealth*, 280 Va. 517, 520 (2010) (quoting *Murphy v. Commonwealth*, 264 Va. 568, 570 (2002)).

According to Richmond City Police Officer John Gilbert's sworn affidavit attached to a search warrant, on April 13, 2022, police officers were conducting surveillance at an apartment on Chamberlayne Avenue. Officer Garrick Danko, a Richmond police officer tasked with investigating narcotics distribution, testified at a hearing in this case that he was already investigating Moncrea for narcotics distribution back on March 4, 2022, when the officer ran Moncrea's DMV record and discovered that Moncrea did not have a valid driver's license. Officer Danko testified that the police continued to investigate Moncrea for suspected narcotics distribution after March 4, 2022, up until April 13, 2022. Richmond Police Officer Dominic Colombo testified that, on April 13, 2022, the officers were on surveillance in the area of Chamberlayne Avenue specifically looking for Moncrea. According to the affidavit, the officers saw Moncrea leave an apartment and then enter a car. The officers soon stopped Moncrea while he was still driving on Chamberlayne Avenue for driving without a license. The affidavit states, "Officers recovered a firearm from underneath the driver's front seat where Moncrea was seated." The officers ran a criminal background check which showed that Moncrea was a convicted felon. The affidavit then states, "Additional ammunition of 5.7 and shotgun were recovered inside the vehicle. No shotgun or caliber firearm for a 5.7 was recovered."

Officer Gilbert's affidavit explains, "This Affiant went to 3920 Chamberlayne Avenue Apartment 27 to conduct a knock and talk. This Affiant spoke with Kiarra Beards who stated Moncrea just left the apartment. Beards stated it was not her apartment." Officer Gilbert then wrote, "Based on the information provided in this Affidavit, your affiant believes that evidence supporting possession of a firearm by a convicted felon will be recovered from 3920 Chamberlayne Avenue Apartment 27."

The magistrate authorized the search warrant for "[f]irearms, firearm accessories and ammunition." According to the stipulation of facts attached to Moncrea's plea agreement, the officers searched the apartment pursuant to the search warrant, and they found baggies containing heroin, cocaine, and fentanyl. The officers also found $5,630 in cash and multiple digital scales in the apartment. Moncrea was then charged with two counts of possession of a controlled substance with the intent to distribute, one count of possession of a controlled substance with the intent to distribute while in possession of a firearm, and one count of possession of a firearm by a convicted felon.

Moncrea filed a motion to suppress the evidence obtained from the search of the apartment. The circuit court judge denied the motion, and stated, "I think that the search warrant is facially valid. And even if it wasn't, I think the good faith exception applies."

After the circuit court denied Moncrea's motion to suppress, Moncrea entered into a conditional plea of no contest to two counts of possession with intent to distribute a controlled substance and one count of possession of a firearm by a convicted felon.[2] The plea agreement also preserved Moncrea's right to appeal the circuit court's denial of his motion to suppress evidence that the police seized in executing the search warrant. The circuit court then entered an order sentencing Moncrea to 10 years of imprisonment for each possession with the intent to distribute conviction, with 10 years suspended for each conviction for a period of 20 years. Moncrea was also sentenced to 5 years of imprisonment for his possession of a firearm by a convicted felon conviction, with 2 years suspended for a period of 5 years. The sentencing order then states, "The defendant shall be placed on probation, to commence upon release from incarceration, under the

---

[2] A plea of no contest is treated like a guilty plea for purposes of an appeal. *See Clauson v. Commonwealth*, 29 Va. App. 282, 294 (1999) ("In Virginia, '[w]hen an accused enters a voluntary and intelligent plea of guilty to an offense, he waives all defenses except those jurisdictional.' We hold the same is true when an accused enters a plea of *nolo contendere*." (alteration in original) (citation omitted)).

supervision of a Probation Officer, until released by the Court or by the Probation Officer."

Moncrea now appeals to this Court.

ANALYSIS

I.  Search Warrant

Moncrea's first assignment of error states, "The Circuit Court erred by denying Mr. Moncrea's 'Motion to Suppress Evidence Recovered Pursuant to Defective Search Warrant.'"[3] Moncrea argued in his motion to suppress that the search of the apartment violated the Fourth Amendment to the United States Constitution because "the magistrate lacked a substantial basis for finding that the facts set forth in the affidavit established probable cause."

The Supreme Court has stated, "A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that an appellate court must review de novo on appeal." *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008).

> In making such a determination, an appellate court must give deference to the factual findings of the circuit court and give due weight to the inferences drawn from those factual findings; however, the appellate court must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment.

*Id.* "The defendant has the burden to show that, considering the evidence in the light most favorable to the Commonwealth, the circuit court's denial of his suppression motion was reversible error." *Id.* at 564.

---

[3] This Court directed the parties to provide supplemental briefing to determine whether Moncrea has standing to challenge the search of the apartment in this case.  After reviewing the supplemental briefs, this Court declines to apply the right-result-different-reason doctrine to affirm the circuit court based on a lack of standing by Moncrea because further factual development is necessary to resolve this issue.  *See Perry v. Commonwealth*, 280 Va. 572, 580 (2010) (holding that the right-result-different-reason doctrine is inapplicable when "additional factual presentation is necessary to resolve the newly-advanced reason").

If law enforcement seizes a defendant's property pursuant to a search warrant that was issued without probable cause, then the evidence obtained from that search could be excluded at the defendant's trial in order to deter police misconduct. *See United States v. Leon*, 468 U.S. 897, 916 (1984) ("[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates."). However, the United States Supreme Court has often held that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* at 918. In *Hudson v. Michigan*, 547 U.S. 586, 591 (2006), the Supreme Court emphasized, "Suppression of evidence, however, has always been our last resort, not our first impulse." As the Virginia Supreme Court has also explained, "This deterrent is not present when a police officer, acting in objective good faith, obtains a search warrant from a magistrate and conducts a search within the scope of the warrant." *Polston v. Commonwealth*, 255 Va. 500, 503 (1998). If the good-faith exception applies, then the evidence will not be suppressed, even if the search warrant was issued without probable cause.

"Under the good faith exception, '[w]here a police officer has an objectively reasonable belief that the issuing magistrate had probable cause to issue the search warrant, the officer may rely upon the magistrate's probable cause determination and the evidence will not be excluded.'" *Lane v. Commonwealth*, 51 Va. App. 565, 572 (2008) (alteration in original) (quoting *Colaw v. Commonwealth*, 32 Va. App. 806, 810 (2000)). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 921. Of course, the good faith exception does not apply when "an affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Ward v. Commonwealth*, 273 Va. 211, 222 (2007) (alteration in original) (quoting *United States v. Perez*, 393 F.3d 457, 461 (4th

Cir. 2004)). However, the Supreme Court has emphasized, "The showing of an 'objectively reasonable belief' that probable cause existed under the good-faith exception is a significantly lesser standard than a showing of a 'substantial basis' for upholding a magistrate's determination of probable cause." *Adams v. Commonwealth*, 275 Va. 260, 274 (2008).

This Court has held, "[A]s long as there is *some* indicia of probable cause in the underlying affidavit, we will apply the good faith exception as long as a reasonable police officer, after assessing the facts set forth in the affidavit, could have believed the warrant was valid." *Anzualda v. Commonwealth*, 44 Va. App. 764, 781 (2005) (*en banc*) (emphasis in original). "Thus, for the good faith rule to apply, the affidavit must provide *some* nexus between the evidence sought and the place to be searched." *Cunningham v. Commonwealth*, 49 Va. App. 605, 619 (2007) (emphasis added). Furthermore, when conducting a good-faith exception analysis, "we can, and should, 'look to the totality of the circumstances including what [the executing police officers] knew but did not include in [the] affidavit.'" *Adams*, 275 Va. at 270 (alterations in original) (quoting *United States v. Martin*, 833 F.2d 752, 756 (8th Cir. 1987)).

Here, Officer Danko testified that the officers had been investigating Moncrea for suspected narcotics distribution since February or early March 2022 – and at least since March 4, 2022, including right up until they saw Moncrea leaving the apartment on Chamberlayne Avenue on April 13, 2022. Furthermore, Officer Colombo testified that the police officers were looking specifically for Moncrea when they were conducting surveillance for narcotics distribution at the Chamberlayne Avenue apartment complex. The officers watched Moncrea exit the apartment and then drive away without a valid driver's license. After then quickly pulling Moncrea over while he was still driving on Chamberlayne Avenue, the officers discovered that Moncrea was a felon in possession of a firearm, and they soon discovered that he also had two kinds of ammunition in his car that did not even match the firearm he was illegally possessing in the vehicle. The officers

could reasonably infer that Moncrea would only have ammunition for firearms that he also possessed, even if these firearms were not in the vehicle at the time he was stopped. They could also reasonably infer, in the absence of those additional firearms being in the vehicle, that the other firearms were likely kept at the apartment that Moncrea had just left – in the apartment complex that the officers had gone to in order to conduct surveillance on Moncrea. When the officers then went back to that apartment after the traffic stop, they spoke with Kiarra Beards who "stated it was not her apartment." Beards also offered that "Moncrea just left the apartment." When all of this evidence is taken together, the totality of all these facts gave the officers reason to believe that Moncrea could well be storing the additional firearms in the apartment that he had just left, given that the officers were already specifically looking for Moncrea at that location during their ongoing narcotics investigation of him when they saw Moncrea leave the apartment. When they then stopped him, he had one firearm in the vehicle with him along with ammunition to other types of firearms. Furthermore, he had had no contact with any person between leaving the apartment and when the officers saw him get into his vehicle to the time that they then effected a traffic stop of him only a short distance away while still on Chamberlayne Avenue.

The facts of this case are very different from those in *Cunningham*, 49 Va. App. 605, a case on which Moncrea relies. In *Cunningham*, the officers pulled over the defendant for driving erratically, and they found that Cunningham had marijuana, several plastic baggies (one of which was suspected of containing cocaine residue), and devices used for smoking in his car. *Id.* at 609-10. The officers then obtained a warrant to search Cunningham's home for marijuana and cocaine stating that "people that use marijuana often keep marijuana as well as devices used to ingest marijuana in their residences" and that "cocaine is sold in small quantities and is easily concealed on individuals as well as within residences." *Id.* at 610. In reversing the circuit court's decision to deny the motion to suppress, this Court stated that "the facts failed to

establish a sufficient constitutional nexus between Cunningham's possession of the marijuana and his residence." *Id.* at 620. The Court then held that the police could not search "a person's residence based solely on suspected drug use unconnected to the residence." *Id.* at 621.

In the case now before this Court, the police officers could connect Moncrea's suspected firearms with the apartment that he had just left because the officers saw Moncrea drive away from that apartment only to discover moments later during the traffic stop that Moncrea had two types of ammunition that did not match the firearm that he already illegally had in his possession in the vehicle. During their earlier investigation of Moncrea that day, the officers watched Moncrea leave this apartment and then go directly to his car – indicating that Moncrea did not obtain the ammunition from another person or location. Notably, Moncrea was not seen leaving a location that is widely open to the public where it would be difficult (or unlikely) to store firearms, such as a restaurant, a store, or a church. In addition, the officers could further connect Moncrea to this specific apartment because, as part of their ongoing narcotics investigation, they already had reason to believe that they would find Moncrea at this apartment, which is undoubtedly why the police had it staked out for him. Furthermore, when the officers went back to the apartment after the traffic stop and before obtaining the search warrant, they spoke with the only other person in the apartment who answered the door who stated that "it was not her apartment" and that "Moncrea just left the apartment." The fact that Kiarra Beards told the officers that it was not her apartment and only said that Moncrea had just left but did not also deny (as she did for herself) that this was Moncrea's apartment may well have further provided a reasonable police officer with the belief that there was indeed a further nexus between Moncrea and this apartment. In any event, the totality of all of these facts provided the officers with at least the requisite "*some* nexus between the evidence sought and the place to be searched." *Cunningham*, 49 Va. App. at 619 (emphasis added).

As the Virginia Supreme Court has held, "The showing of an 'objectively reasonable belief' that probable cause existed under the good-faith exception is a significantly lesser standard than a showing of a 'substantial basis' for upholding a magistrate's determination of probable cause." *Adams*, 275 Va. at 274. Consequently, even assuming without deciding that the search warrant lacked probable cause, we hold that the officers could actually execute the search warrant in good faith because there was "*some* indicia of probable cause in the underlying affidavit," and the officers executed the warrant in good faith. *Anzualda*, 44 Va. App. at 781 (emphasis in original); *see also Drumheller v. Commonwealth*, 223 Va. 695, 698 (1982) ("We realize that search warrants 'are normally drafted by non-lawyers in the midst and haste of a criminal investigation.'" (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965))). Therefore, for all of these reasons, we cannot say that the circuit court erred when it denied Moncrea's motion to suppress.[4]

## II. Supervised Probation

Moncrea also argues, "The Circuit Court erred by imposing a period of supervised probation beyond that authorized by Va. Code sec. 19.2-303." Moncrea contends that his sentencing order is void *ab initio*, and, therefore, can be challenged for the first time now on appeal.

Code § 19.2-303 states, "After conviction, whether with or without jury, the court may suspend imposition of sentence or suspend the sentence in whole or part and in addition may place the defendant on probation under such conditions as the court shall determine." Effective July 1,

---

[4] In his opening brief to this Court, Moncrea argues that the officers did not execute the search warrant in good faith because the record contains other addresses that could have been Moncrea's residence. However, Moncrea failed to raise this specific argument below in the circuit court. Consequently, Moncrea has waived this specific argument on appeal under Rule 5A:18. *See also West Alexandria Prop., Inc. v. First Va. Mortg. & Real Estate Inv. Trust*, 221 Va. 134, 138 (1980) ("On appeal, though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court.").

2021, the General Assembly added to this code section that "[a]ny period of supervised probation shall not exceed five years from the release of the defendant from any active period of incarceration." *Id.* Consequently, as of July 1, 2021, a circuit court only has the authority to order a maximum of five years of *supervised* probation for a defendant's sentence.[5]

The Supreme Court has recently stated, "Courts have no inherent authority to suspend the execution of sentences or to impose probation conditions outside the parameters of the Virginia Code." *Hannah v. Commonwealth*, 303 Va. 106, 119 (2024). The Court has also held that "a sentence imposed in violation of a prescribed statutory range of punishment is void *ab initio* because 'the character of the judgment was not such as the [C]ourt had the power to render.'" *Rawls v. Commonwealth*, 278 Va. 213, 221 (2009) (alteration in original) (quoting *Anthony v. Kasey*, 83 Va. 338, 340 (1887)). "Objections to void ab initio judgments may be raised by any party in the case at any point during a valid direct or collateral proceeding where the voidness of the order is properly at issue, including by a court for the first time on appeal." *Hannah*, 303 Va. at 120.

---

[5] Code § 19.2-303 also provides,

> Notwithstanding any other provision of law, in any case where a defendant is convicted of a violation of § 18.2-48, 18.2-61, 18.2-63, 18.2-67.1, 18.2-67.2, 18.2-67.3, 18.2-370, or 18.2-370.1, committed on or after July 1, 2006, and some portion of the sentence is suspended, the judge shall order that the period of suspension shall be for a length of time at least equal to the statutory maximum period for which the defendant might originally have been sentenced to be imprisoned, and the defendant shall be placed on probation for that period of suspension subject to revocation by the court. The conditions of probation may include such conditions as the court shall determine, including active supervision.

This portion of the Code does not apply in this case because Moncrea was not convicted of any of the listed crimes.

Moncrea's sentencing order states, "The defendant shall be placed on probation, to commence upon release from incarceration, under the supervision of a Probation Officer, *until released by the Court or by the Probation Officer*." (Emphasis added). Moncrea was also given a suspended sentence of 22 years for his convictions. Given that the circuit court did not place a time limit on Moncrea's supervised probation, according to the terms of his sentencing order, the circuit court erred in that order by allowing Moncrea to be on supervised probation potentially throughout the entirety of his 22-year suspended sentence. While the circuit court could place Moncrea on probation for that entire period, the circuit court, however, only had the authority to order Moncrea to be on *supervised* probation for at most five years under Code § 19.2-303. Therefore, Moncrea's sentencing order is void *ab initio* to the extent that it orders Moncrea to serve more than five years of *supervised* probation. *Id.* Consequently, we must reverse the circuit court's decision to order Moncrea to serve more than five years of *supervised* probation and remand this case to the circuit court for it to resentence Moncrea with regard to the length of his period of *supervised* probation.

CONCLUSION

For all of these reasons, we do not disturb the circuit court's decision to deny Moncrea's motion to suppress, and we do not disturb Moncrea's convictions. However, we reverse the circuit court's decision to sentence Moncrea for an indeterminate period of *supervised* probation, and we remand this case to the circuit court for resentencing in order for it to readjust the length of Moncrea's *supervised* probation in accordance with Code § 19.2-303.

*Affirmed in part, and reversed and remanded in part.*